ADMIRE ET AL. *v*. BREWER ET AL.

[No. 16,662. Filed May 8, 1942. Rehearing denied June 17, 1942. Transfer denied September 21, 1942.]

*Owen S. Boling, Herman W. Kothe,* and *Grier M. Shotwell,* all of Indianapolis, and *Ivory J. Drybread,* of Franklin, for appellants.

*Thomas E. Garvin,* and *Floyd W. Burns,* both of Indianapolis, and *M. O. Sullivan,* of Shelbyville, for appellees.

DeVoss, C. J.—On July 1, 1936, appellants Ronald Admire, Lillie D. Admire, and Julia Jean Rudd were the owners of all the capital stock of the Greenwood Dairy Farms, Inc. On said day, appellees entered into a written contract with above named appellants to purchase the entire capital stock of said corporation at and for the sum of $50,000.00. It was provided therein that the sum of $8,000.00 should be paid in cash and that appellees should assume the payment of divers accounts due and owing by appellants, and that the residue of the purchase price, after deducting the items assumed, should be evidenced by promissory notes of the appellees, secured by a first mortgage on all the property, assets and business of said corporation. On said 1st day of July, 1936, appellees paid to appellants, Ronald Admire, Lillie D. Admire, and Julia Jean Rudd, in consideration of said capital stock, the sum of $8,000.00 cash, and after computing the total sum of items, payment of which had been assumed by appellees,

they executed their note for the residue of said purchase price in the sum of $36,528.72, to Ivory J. Drybread, trustee for appellants Ronald Admire, Lillie D. Admire, and Julia Jean Rudd, and to secure said note, executed and delivered to said Ivory J. Drybread a first mortgage on all of the assets, property and business of said corporation.

Appellees filed their amended supplemental complaint in the Marion Circuit Court alleging the facts herein above set out, and, in addition thereto, say that in said sale by appellants to appellees, the appellants falsely and fraudulently misrepresented and concealed material facts concerning the status of said corporation. They further allege that the books and records of the corportion which were shown to appellees in the transaction, revealed the business to be operating at a profit, whereas said corporation, over a long period of time, had been allowing illegal rebates to customers and had been selling products below the legal schedule of prices prescribed by the Indiana Milk Control Board, which practices greatly reduced the income of the corporation and the value of the stock; that said illegal rebates amounted to approximately $800.00 per month and, because of the long practice in allowing the same, the precedent established thereby could not be abandoned. Because of such facts, the corporation could not be operated at a profit and was insolvent and a receiver was appointed therefor on October 16, 1936, and said corporation has been adjudicated as an involuntary bankrupt in the United States District Court.

Appellees further allege that they relied and acted upon such false representations and were thereby induced to enter into said transaction and that upon discovering the conditions, tendered to appellants said stock certificates and all other rights in the assets and prop-

erty of said corporation and demanded they be restored to their *status quo;* this appellants refused to do and they (appellees) have delivered to the clerk of the Marion Circuit Court said stock certificates for the use and benefit of appellants. It is further alleged in the complaint that appellant James B. Nelson, loaned to appellee Glenn Brewer, the sum of $7,500.00 to finance the cash payment made and that such loan was secured by said Glenn Brewer by executing a note and mortgage upon certain real estate in the State of Missouri, and that in the negotiations of the sale of said corporate stock, said James B. Nelson acted for himself and for and on behalf of his daughter, Julia Jean Rudd, appellant.

In addition to the contract of sale of the corporate stock, appellants James B. Nelson and Arthur Admire executed an indemnifying agreement with appellees indemnifying them against any loss by reason of the conduct of the business prior to the sale thereof and to indemnify them against any loss by reason of the failure of Ronald Admire, Lillie D. Admire, and Julia Jean Rudd to execute the contract of sale.

A further agreement was executed whereby appellants Ronald Admire, Lillie D. Admire and Julia Jean Rudd agreed not to engage in the dairy business.

Appellees, among other things, prayed that the contracts and transactions relating to such sale be rescinded and cancelled and for a restoration of *status quo* of all parties.

Appellants filed their separate and several answers to the amended supplemental complaint in four paragraphs. The first paragrah was in general denial. The second paragraph alleged laches in rescinding the contract and mismanagement of the business causing loss to said corporation. The third paragraph alleged par-

ticular acts of mismanagement of the business affairs of the corporation by appellees and a failure to offer to restore appellants to *status quo* of July 1, 1936. The fourth paragraph alleged further mismanagement and violation of the contract of sale by withdrawal of money from the funds of the corporation by appellees and alleged an estoppel.

To the second, third, and fourth paragraphs of answer, appellees filed a reply in general denial and the cause was submitted to the court for trial without a jury. The court made a finding and entered a judgment thereon adverse to appellants, rescinding and setting aside the contract of sale, the indemnifying agreement, and the agreement of appellants not to engage in the dairy business and relieved appellees from liability on the note of $36,528.72, and also rendered a personal judgment against appellants Ronald Admire, Lillie D. Admire, Julia Jean Rudd, and James B. Nelson in the principal sum of $8,000.00, plus the sum of $1,260.00 interest.

Appellants filed their motion for a new trial which was by the court overruled, and this appeal followed.

The reasons assigned and relied upon in this court for a reversal is the overruling of the motion for a new trial.

The specific reasons assigned in the motion for a new trial are: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law.

It is contended by appellants that appellees failed to act promptly upon the discovery of the alleged fraud; that they made no effort to, nor did they restore appellants to *status quo;* they made no accounting of their operations. After the fraud was discovered, they continued to deal with the corporation as though the con-

tract was binding and that by such conduct they have estopped themselves from asserting fraud as a basis for rescission and the trial court failed to order the return of the certificates of stock to appellants.

Rescission of contracts has a well defined meaning and contemplates and requires affirmative action immediately upon discovery by the one seeking such recission. It contemplates and includes the idea of restoration of both parties to the contract to their *status quo* and the return by each to the other of the consideration given and received. *DeFord* v. *Urbain* (1874), 48 Ind. 219; *Citizens' Street Railroad Company* v. *Horton* (1897), 18 Ind. App. 335, 48 N. E. 22.

Appellants have stated numerous propositions of law and cited authorities to sustain them relative to rescission of contracts and the elements that enter into such rescission. With these statements of the law we agree and to adjudicate the questions involved in this appeal, we must of necessity consider the facts as disclosed by the evidence.

In a suit in equity, the Supreme Court is bound to give the same respect to the finding of the trial court that is given to the verdict of the jury or finding of a court in an action at law. *Lake Erie & Western Railway Company* v. *Griffin* (1886), 107 Ind. 464, 8 N. E. 451; *Henderson* v. *Henderson* (1887), 110 Ind. 316, 11 N. E. 432.

The evidence discloses that the Greenwood Dairy Farm, Inc., was organized in 1932; and that James B. Nelson, from time to time, had advanced large sums of money for use in said corporation; and, as stated by Arthur Admire, one of the appellants, the federal income tax return for the year of 1933 had showed a

loss of $6,000.00 which was true. Ronald Admire, one of the appellants, owned one share of stock given to him by his father and he, Ronald, was to receive 10% of the selling price of said corporation. Prior to July 1, 1936, the date of sale, said corporation had been engaged in numerous law suits growing out of the operation of said plant. At the time appellee Glenn Brewer became interested in the purchase of said company, he had a conversation with Ronald Admire who informed him that the company was a going concern and making money and that the sale price was $50,000.00. Mr. Brewer inquired if an audit of the books could be made and was informed that it could not be made because the figures relating to the farm adjoining were mixed with the dairy figures and that a real audit could not be made in regard to the operation of the dairy plant. Subsequent to that time, when Mr. Nelson and Ronald Admire, appellants, and Mr. Fechner and Mr. Brewer, appellees, were present, Mr. Brewer said that if everything was as it appeared, and everything was all right, that they were satisfied that the business was desirable. At that time Mr. Nelson said that the business was making money and one month they made $1,500.00 profit. There was nothing said about discounts at that conversation. July 1st was agreed upon as the date for closing the deal. Glenn Brewer, appellee, further stated that he was given to understand that Arthur Admire and James B. Nelson were the owners of the business and he did not know at that time that the stock was not in their names. Ronald Admire told him they were the owners. Prior to July 1, 1936, a meeting was held between Mr. Nelson, Mr. Drybread, Arthur Admire, Ronald Admire and appellees herein and an agreement was drawn up at Mr. Nelson's suggestion. Further negotiations were had between appel-

lee Glenn Brewer and James B. Nelson relative to the borrowing by Brewer from Nelson the sum of $7,500.00. The evidence further discloses that the books and records of the company shown to appellees and their representatives during the negotiations for the sale of the stock showed the business to be operating at a profit.

After appellees took over said business and began the operation thereof, they ascertained that discounts were being given purchasers of milk and that in the month of July such discounts amounted to approximately $800.00. These discounts had been in effect for a year or so and a precedent had been established with the customers. In July, appellees reduced the discounts and lost customers. They were unable to operate the business at a profit with the discounts in effect. The loss for the month of July was approximately $900.00, for August, about the same, and the September losses approximated that amount. After the discovery that the discounts were being given, Mr. Brewer called upon Mr. Drybread and told him that the discounts were not known of at the time of the purchase and that there were several other things that were not made known, such as the lack of bottles; and that he wanted to see Mr. Nelson about getting things straightened out. Mr. Drybread said Mr. Nelson was in Michigan and that he did not know when he would come back and he, (Drybread) could do nothing until Mr. Nelson returned. Mr. Brewer further testified that Mr. Drybread informed him that when Mr. Nelson returned that they would all get together and that the matters would be straightened out.

About the middle of September, 1936, Mr. Brewer learned of the return to Indianapolis of Mr. Nelson and immediately got in touch with him. At that time

Mr. Nelson agreed to meet Mr. Brewer at the Fame Laundry at 3:00 on the following afternoon, which appointment he failed to keep. Mr. Brewer did, however, on that day have a conversation with Arthur Admire about being hoodwinked into a crooked deal and informed him that he wanted an adjustment or to rescind the contract. Mr. Admire informed him that he would have to see Mr. Nelson. A few days later Mr. Brewer called on Mr. Nelson at the Marott Hotel and was informed by him that he did not have anything to do with the Greenwood Dairy. However, he did inquire of Mr. Brewer as to what kind of a proposition he had and also said that he would take the matter up with Arthur Admire. The evidence further discloses that in a conversation between Ralph Myers and Ronald Admire, shortly after July 1, 1936, with respect to the sale of the Greenwood Dairy Farms, that Ronald Admire said that he had gotten $50,000.00 for the Greenwood Dairy Farms, Inc., and that when he told Mr. Nelson and his father of the sale they said they would not believe it until they saw it in writing, and, in the same conversation, Ronald Admire made the statement that he did not think that Mr. Brewer could make a go of it. Said witness Myers also testified that, prior to the sale, he was getting a discount of $.02 a quart on all the milk he purchased from the Greenwood Dairy Farm, Inc.

On cross-examination, the appellant James B. Nelson denied that he told Mr. Brewer that the corporation was operating at a profit and that he did not suppose that it was so operating and that he had to keep pumping money into it to keep it going and that he wasn't going to put any more money into it.

On October 21, 1936, the appellees mailed a letter to Ronald Admire, Lillie D. Admire, Julia Jean Rudd,

James B. Nelson, and Ivory J. Drybread informing each of them that appellees desired to rescind and cancel the transaction and tendered to them all benefits received under said contract and demanded to be returned to *status quo*.

Subsequent to the mailing of this letter and to the conversations had by Mr. Brewer with appellants, appel-. lees conserved the property to the best of their ability under the circumstances.

The evidence in this case consists of approximately 1,000 pages. We have read a sufficient part thereof to convince us that there was evidence to warrant the finding and judgment of the court. Under the rules established by this court, if there is any evidence to support the judgment of the trial court the same will be sustained. The same rules apply in cases of equity as in cases of law. Consequently an affirmance of its judgment is necessitated.

Judgment affirmed.

NOTE.—Reported in 41 N. E. (2d) 662.