COOLEY *v.* STOEFFLER ET AL.

[No. 18,004. Filed June 15, 1950. Rehearing denied November 14, 1950.]

*Johnson, Zechiel & Johnson,* of Indianapolis, for appellant.

*Rappaport, Kipp & Leiber,* of Indianapolis, for appellees.

CRUMPACKER, J.—Upon the appellees' petition for a rehearing of this cause the court has reconsidered its decision of April 18, 1950, 91 N. E. 2d 653, and now supersedes the same as follows:

This is a suit to foreclose a mechanic's lien. The appellant's complaint alleges that the parties hereto entered into a written contract whereby the appellant agreed to furnish and install a heating plant in the appellees' residence consisting of an "American Quick Heat" oil burning furnace, model "A-75-UB," two 275 gallon oil tanks, seven warm air and two cold air runs, in the installation of which the then present registers were to be used. The parties agreed that any extras not covered by the contract would be charged to the appellees at reasonable prices and the appellant guaranteed that the plant, when installed, would heat the appellees' residence to a temperature of 72 degrees Fahrenheit in zero weather. As consideration for the completed job the appellees agreed to pay the appellant

$200 upon execution of the contract and $516 within 30 days after the work was done. That after having made this contract the appellant learned that the model "A-75-UB" furnace could not be supplied by the manufacturer for an indefinite time and he so informed the appellees together with the information that a model "H-55-D," made by the same company, was available immediately and would meet the contract specifications in respect to heat. That the appellees agreed to the substitution and that appellant thereupon began performance of the contract as modified by said oral agreement. As the work progressed the appellees decided to have the registers in the living and dining rooms placed in the walls rather than in the floors as they then were. This necessitated extra materials and labor of a reasonable value of $48.91 which the appellant furnished. That he performed the contract in all respects according to its terms but the appellees refused to pay either the balance due thereon in the sum of $516 or his bill for extras. That to secure the payment of said money due him he filed notice of his intention to hold a mechanic's lien on the appellees' said residence property, in all respects according to law, and he asks that he may have judgment in the sum of $564.91 and that his said lien be foreclosed to pay the same.

To this complaint the appellees addressed two affirmative paragraphs of answer, denominated a cross-complaint, in both of which they allege that they were wholly ignorant of the science of house heating and relied implicitly on the appellant's representations as to the character of equipment necessary to heat their house comfortably in cold weather. That they did not agree to the substitution of model "H-52-D" for the "A-75-UB" specified in the contract and that the same is grossly inadequate for the purpose for which

it was installed. In the first of these paragraphs of cross-complaint they say that the appellant wrongfully and fraudulently obtained the down payment of $200 mentioned in the complaint and ask that the same be returned to them. The second alleges that the appellant induced them, through fraud and misrepresentation, to enter into the contract involved and that they relied entirely upon the representations of the appellant in doing so and therefore they ask the return of said down payment of $200 plus $300 damages for the value of an old furnace that was removed in the process of installing the new one.

It is apparent that this cross-complaint proceeds upon the theory that the appellees were entitled to and did rescind the contract sued upon because of (1) a breach of warranty, (2) fraud in inducing them to lay out money for an inadequate heating plant, and (3) fraud in the execution of the contract in the first instance. Wherefore they want back all money laid out and expended by reason of said contract. Upon the trial of these issues the court found for the appellees on said cross-complaint and rendered judgment in their favor in the sum of $205 and, having found that the contract sued upon by the appellant had been properly rescinded, judgment necessarily went against the appellant on his complaint.

The theory of rescission, as a remedy for breach of contract or for fraud in its execution or performance, has been given a well-defined meaning and application by the courts of this state and it has been held uniformly that it includes the idea of restoration of both parties to the contract to their *status quo* and the return by each to the other of the consideration given and received. *Admire* v. *Brewer* (1942), 112 Ind App. 92, 41 N. E. 2d 662; *DeFord* v. *Urbain* (1874), 48 Ind. 219; *The Citizens' Street Railroad Company*

v. *Horton* (1897), 18 Ind. App. 335, 48 N. E. 22. As is frequently the case with general rules, this one has its exceptions. "In equity, a contract may be rescinded, although the parties cannot be placed in status quo, where the clearest and strongest equity demands such relief and equity can still be done between the parties, and the rescinding party makes such restitution as is just and within his power." 17 C. J. S., Contracts, § 438, p. 921 and cases cited. It is also true that no offer of restoration is necessary where the rescinding party has received something by reason of the contract that is utterly worthless. *Fleetwood* v. *The Dorsey Machine Company* (1884), 95 Ind. 491. Worthless means without value to either party as well as without intrinsic or market value. 17 C. J. S., Contracts, § 439, p. 923.

An examination of the record, as briefed by counsel, discloses insufficient evidence to sustain the decision in this case predicated, as it clearly is, upon the doctrine of rescission. While there is ample evidence to establish the breach of warranty relied upon as a ground for rescission, it does not appear that the appellees made any effort to restore the *status quo* of the appellant as near as possible under the circumstances or even evidenced a willingness to do so. Even if it be conceded that the parties cannot be placed in *status quo* by reason of the fact that a part of the chattels involved have become attached to and a part of the appellees' real estate, there is no jurisdiction in equity to grant rescission because it is perfectly apparent that damages at law will make the appellees whole. Nor is there an iota of evidence that the consideration the appellees received under the rescinded contract is of no value to the appellant or that it has no intrinsic or market value. The furnace, over which the controversy was principally waged, was inadequate to

meet the appellant's heat guaranty but it was new when installed and the product of a reputable manufacturer. There is no evidence that it was defective or that it failed for any other reason than that it was too small for the task it was sold to perform. The common experience of mankind compels us to conclude that it not only had value to the appellant, who is a dealer in heating equipment, but also it had intrinsic value to anyone.

Judgment reversed and cause remanded with instructions to sustain the appellant's motion for a new trial and to permit the reshaping of the issues in accordance with the views herein expressed.

NOTE.—Reported in 92 N. E. 2d 926.