**Edmund LUKSUS, Plaintiff-Appellee,**

v.

**UNITED PACIFIC INSURANCE CO.,
a Washington Corporation,
Defendant-Appellant.**

**No. 18672.**

United States Court of Appeals,
Seventh Circuit.

Nov. 29, 1971.

**208**

John A. Cook, Chicago, Ill., Willard B. Van Horne, Jr., East Chicago, Ind.,

Samuel M. Lanoff, Chicago, Ill., for defendant-appellant; Morgan, Lanoff, Cook & Madigan, Chicago, Ill., of counsel.

Samuel J. Furlin, Gary, Ind., for plaintiff-appellee; Spangler, Jennings, Spangler & Dougherty, Gary, Ind., of counsel.

Before SWYGERT, Chief Judge, and DUFFY and KNOCH, Senior Circuit Judges.

KNOCH, Senior Circuit Judge.

This is an appeal from judgment for plaintiff-appellee, Edmund Luksus, after trial by the Court sitting without a jury, of an action brought by plaintiff, a sub-contractor, against defendant-appellant, United Pacific Insurance Company, a Washington Corporation, the surety for a general contractor, Talandis Construction Corporation.

Plaintiff, a mason, sub-contracted a part of the work on the Morton Senior High School at Hammond, Indiana.

No issue is taken on appeal with the Trial Court's findings of fact on the nature of the oral contract between plaintiff and Talandis, the brick count and the value of equipment not returned to plaintiff.

On appeal, defendant contends that contrary to the Trial Judge's findings, plaintiff improperly applied most of a $5,000 payment by Talandis not to the Morton job but to a balance due on a prior job, the Munster High School, on which plaintiff had also performed a mason sub-contract for Talandis. Defendant was not the surety for Talandis with respect to the Munster operation.

Defendant also contends that it should not be responsible for the value of equipment which Talandis failed to return after plaintiff left the site of the work or for rental on equipment at the site for the period beginning with plaintiff's departure from the site and ending on the date on which it was recovered.

As defendant feels that Talandis' obligations were not really determined until the actual judgment, defendant argues

that interest for periods prior to the date of the judgment order should not have been allowed.

A pre-trial order states, as established by admissions in pleading or stipulations of counsel, that the bond herein was made for the benefit (inter alia) of this plaintiff, to pay plaintiff all indebtedness which might accrue to him on account of labor, services, materials furnished or rental of equipment pursuant to the contract between plaintiff and Talandis, to the extent that if Talandis did not pay the monies due and owing plaintiff, defendant would pay plaintiff.

There had been three successive overlapping jobs on which plaintiff did mason work for Talandis: Urbana, Munster and Morton High Schools. There was evidence that during the Urbana job, most of Talandis' payment checks indicated which particular invoice was being paid. During the transition period in December, 1965, when plaintiff was already working on Munster, Talandis sent a check for $5,000 "on account" with no invoice specified. Plaintiff applied this sum to the Urbana job. Later in January and March 1966 two more checks came specifically indicating invoices on Urbana. This produced an over-payment on Urbana which plaintiff applied to Munster, taking it out of the $5,000 "on account" payment received in December, 1965. There was no evidence that this method of handling was disputed.

Similarly when another $5,000 check "on account" came in September 15, 1966 during the transition period between the Munster and Morton operations, plaintiff applied it first to the balance due on Munster and then to the third job, Morton. Defendant contends that this represented an afterthought of reasoning by plaintiff and that plaintiff's books and records of the time are susceptible of only one inference: that the $5,000 was really intended for and applied to the Morton job.

■ It is agreed that where a debtor, who owes a creditor money on distinct accounts, makes no direction as to application of his payment, the creditor may apply it as he pleases, and if both parties fail to direct application, the Court will apply it as justice and equity dictate. Dungan v. Dollman, 1878, 64 Ind. 327, 333; Western and Southern Indemnity Co. v. Cramer, 1937, 104 Ind.App. 219, 225–226, 10 N.E.2d 440, 442–443.

Payment of the exact amount due on one bill has been considered to be not conclusive but only a circumstance to be considered in determining whether it was the intent and purpose of the debtor, in making such payment to apply it on the one of two bills which it would exactly pay. Adams Express Co. v. Black, 1878, 62 Ind. 128, 136.

■ Mrs. Luksus testified that on receipt of the $5,000 check on September 16, 1966 she applied $4,362.78 of it to the Munster High School account.

Defendant reasons that this September 15, 1966, $5,000 check must have been intended to apply on Invoice 1035 of the Morton job in the amount of $10,296.82 on the theory that Talandis would be unlikely to send a check in for more than the amount then due on Munster.

Defendant also sees significance in the later checks of October 7 and October 21, 1966. On October 7, 1966, a check of $5,000 was specifically directed to Invoice 1035.

There was another invoice on Morton, Invoice 1037 for $11,281.88. A subsequent check of October 21, 1966, for $5,296.82 was received. The Luksus ledger shows $296.82 to an invoice number 390 and $5,000 to accounts payable. There is a notation on the check voucher that there is no Invoice Number 390, and that Invoice 1035 must be meant. Defendant reasons that plaintiff must have credited both $5,000 checks of September 15 and October 7, 1966 to Invoice 1035 of Morton, leaving a balance of $296.82 only, which was taken out of the October 21, 1966 check. Defendant sees full confirmation of this in Mrs. Luksus' ledger summary of the Morton job show-

ing on October 21, 1966, $296.82 credited to Invoice Number 1035 and $5,000 to Invoice 1037. Plaintiff in brief and oral argument offered other reasonable interpretations of these figures. The Trial Judge was thus presented with a conflict in evidence as to the intentions of the parties on September 15, 1966, when the disputed $5,000 check was received. We cannot say his findings on this contested issue were clearly erroneous.

■ The District Court found that Talandis owed money to plaintiff at various times for labor, services, bonus, rental of equipment etc. and interest was awarded from the various specific dates when sums were due and unpaid. The surety for Talandis was liable for those amounts which Talandis failed to pay, including the interest owned by Talandis.

Defendant relies on U. S. Fidelity and Guaranty Co. v. American Blower Co., 1908, 41 Ind.App. 620, 84 N.E. 555 for the proposition that defendant became liable only after judgment. We cannot agree that the case supports a distinction between what is owed by a principal and what is owed by his surety.

■ The fact that damages are unliquidated does not seem a basis for disallowance of interest. Plaintiff cites N. Y., Chicago and St. L. Ry. Co. v. Roper, 1911, 176 Ind. 497, 506–509, 96 N.E. 468, 472, where the measure of damages after fire was the fair cost market value of the house at the time of damage. Over appellant's exception to the instruction and motion to modify the judgment, interest from the time of the fire was allowed. The Indiana Supreme Court held that plaintiff was thus placed in status quo as he was limited to damages as of the time of the fire and interest ought therefore to run from the same date. The test, the Court said, was whether injury and consequent damage was complete, must be ascertained as of a particular time in accordance with fixed rules of evidence and known standards of value, which a Court or jury must follow in fixing the amount, as distinguished from using one's best judgment to assess the amount for past and future injury or elements not measurable by fixed standards of value. The Court noted that Indiana law in this respect differed from that of Missouri and some other states. This rule was applied in Rauser v. LTV Electro-Systems, Inc., 7 Cir., 1971, 437 F.2d 800, 805, a contract case.

Here damage was complete on specific dates and ascertainable in amount by means of fixed rules of evidence and accepted standards of valuation by mathematical computation with nothing left to conjecture or speculation.

For example, Mr. Talandis testified that there never was a time when one could not count the brick work in place in any given area, and that the parties had agreed as to unit prices applicable. The Vice President of Talandis testified that he and Mr. Luksus counted the concrete block together. Similarly there was an agreed monthly equipment rental.

The Indiana statute, Burns' Ind.Stat. Ann. 19–12–103, IC 1971, 24–5–1–3, profides for interest on an account closed, upon the day an itemized bill shall have been rendered and payment demanded. Itemized bills were submitted on each item involved here.

In Kuhn v. Powell, 1916, 61 Ind.App. 131, 134, 111 N.E. 639, 640, there was a dispute as to whether the plaintiff was entitled to $.45 or $.40 per bushel of corn an unwritten contract with no express provision for interest. The jury found plaintiff entitled to $.45. Interest was allowed from the date of the itemized bill.

Once the Court determined the terms of the contract here the amount involved became easily ascertainable by computation.

■ Defendant stipulated that the bond was executed to pay plaintiff all indebtedness accruing to plaintiff on account (inter alia) of equipment rented under the agreement between plaintiff and Talandis for the Morton job.

The District Court found that certain of the rented equipment was never returned. The value of that equipment is not here disputed. There was evidence that various items of this equipment were in use by Talandis Employees after plaintiff had left the site. We find no error in the District Judge's ruling that defendant owes plaintiff for this rented but unreturned equipment.

As to rented equipment which was ultimately returned, defendant asserts that there was no showing it was used after plaintiff left the site and that rental therefor should not be charged.

There was testimony that plaintiff's employees not only saw some of this equipment in use but that return of it was specifically refused them. Talandis rented the equipment at an agreed monthly rental. It was proper to charge Talandis, and its surety, with that rental for the period the equipment was in Talandis' possession.

We have carefully considered all other points and authorities cited by defendant but find none of them persuasive. The judgment of the District Court is affirmed.

Affirmed.