ECONOMY LEASING CO., LTD., Economy Finance Corporation, Indianapolis Morris Plan Corporation, Appellants (Defendants below),

v.

Alta Baer Dickey WOOD, Continental Leasing Corp. of Memphis, Alta Baer Dickey Wood, E. Oliver Fowlkes III, Administrators of the Estate of Bert G. Dickey, Jr., Deceased, and Union Planters National Bank of Memphis, Executor of the Estate of Bert G. Dickey, Jr., Appellees (Plaintiffs below).

No. 2–1180A359.

Court of Appeals of Indiana, Second District.

Oct. 29, 1981.

Ronald E. Brown, Nisenbaum & Brown, Indianapolis, for appellants.

Roy A. Pope, Indianapolis, Kirkpatrick, Lucas & Kirkpatrick, Memphis, Tenn., for appellees.

SHIELDS, Judge.

Appellants Economy Leasing Co., Ltd. (Economy Leasing), Economy Finance Corporation (Economy Finance), and Indianapolis Morris Plan Corporation (Morris Plan) appeal from an adverse judgment of $25,000 in favor of appellees Alta Baer Dickey Wood (Alta), Continental Leasing Corp. of Memphis (Continental), Alta Baer Dickey Wood, E. Oliver Fowlkes III, administrators of the Estate of Bert G. Dickey, Jr., Deceased, and Union Planters National Bank of Memphis, Executor of the Estate of Bert G. Dickey, Jr.

Appellants raise three basic issues:

1. Did the trial court err in allowing recovery for the appellees on the theory of mutual rescission, fraud, misrepresentation, and/or breach of contract?

2. Did the trial court err in entering judgment against all appellants?

3. Did the trial court err in allowing prejudgment interest?

We reverse in part and affirm in part.

## I

Appellants requested special findings of fact under Ind.Rules of Procedure, Trial Rule 52(A). "[T]he purpose of special findings is to provide the parties and reviewing courts with the theory on which the judge decided the case in order that the right of review for error may be effectively preserved." *In Re Marriage of Miles,* (1977) 173 Ind.App. 5, 8, 362 N.E.2d 171, 174; *Smith v. City of South Bend,* (1980) Ind.App., 399 N.E.2d 846. Whether the findings of fact are adequate depends upon whether they are sufficient to disclose a basis for the legal result. *Miles; Sandoval v. Hamersley,* (1981) Ind.App., 419 N.E.2d 813.

The special findings of fact reveal B. G. Dickey, Jr. (Dickey) originally contracted to purchase an airplane but later decided to lease the same airplane. A lease agreement for the airplane was executed between Dickey, Alta, Continental, and Bert G. Dickey (Dickey Jr.'s father) as lessees and Economy Leasing as lessor. Dickey initially paid as rent $32,525.60 in either cash (used to purchase the plane) or equipment installed in the plane. Economy Leasing paid the balance of $105,000 on the plane purchase price. Upon the execution of the five year lease, Dickey paid an additional $4,640 in advance rent. Thereafter Dickey paid two months rent of $4,640 before the plane was destroyed in a crash in which Dickey died. The lease provided in case of loss or damage to the plane lessee should repair or replace the plane. However, upon the loss of the airplane, there were no discussions between the parties concerning the plane's replacement. The only discussions involved the distribution of $130,000 in insurance proceeds.

The trial court concluded the lease was rescinded by mutual agreement of the parties upon destruction of the aircraft and appellants should "restore" to appellees the sum of $25,000.

Appellants first urge the trial court's determination that the parties mutually rescinded the lease is erroneous because it is contrary to law and not supported by the evidence. They argue the parties could not rescind the lease because they could not be placed in *status quo* due to the destruction of the aircraft. This argument fails because the appellants misconceive the concept of a mutual rescission.

■ Mutual rescission[1] is an agreement or contract between the parties, the subject of which is the rescission of an earlier agreement or contract. 17A C.J.S. *Contracts* § 386 (1963). Rescission of contract by mutual agreement terminates the parties' rights and duties under the contract. *Corbin on Contracts*, § 1236 (one volume ed. 1952). Mutual consent to the rescission of a contract may be evidenced by the parties' actions as well as by an express agreement. *Church v. Bobbs-Merrill Publishing Co.*, (S.D.Ind.1959), 170 F.Supp. 32; *Gwynne v. Ramsey*, (1883) 92 Ind. 414; *Lindenborg v. M & L Builders and Brokers, Inc.*, (1973) 158 Ind.App. 311, 302 N.E.2d 816. The parties by mutual consent may rescind a contract at any stage of performance. 17A C.J.S. *Contracts* § 387 (1963).

■ The evidence supports the determination of a mutual rescission. Paragraph 9(6) of the lease provided:

"(B) Lessee hereby assumes and shall bear the entire risk of loss and damage to the leased property or any part thereof from any and every cause whatsoever. No loss or damage to the leased property or any part thereof shall impair any obligation of the lessee under this Lease which shall continue in full force and effect. *In the event of loss or damage of any kind whatsoever to the leased property, or any part thereof, lessee, at the option of lessor, shall* (i) place the same in good *repair*, condition and working order *or* (b) [sic] *replace* the same with property of the same kind in good repair, condition and working order ...." (Emphasis added.)

1. Mutual rescission should be distinguished from the "right to rescind" for cause or pursuant to a contract provision.

2. The general rule in rescission of contracts is the parties must be restored to the same condition as before the contract was made. *Stewart v. Ludwick*, (1867) 29 Ind. 230, 235; *Kruse, Kruse & Miklosko, Inc. v. Beedy*, (1976) 170 Ind.App. 373, 398, 353 N.E.2d 514, 530; *Estate of Gillian v. Estate of Gillian*, (1980) Ind.App., 406 N.E.2d 981, 989. However, absolute and literal restoration of the parties to their former position is not necessary. 17A C.J.S. *Contracts* § 438.

After the aircraft's destruction there was neither conduct nor conversation relative to repairing or replacing the aircraft. In fact, the conduct of appellants in obtaining and retaining the insurance proceeds negates any such intent. Thus, the mutual consent for rescission of the lease was evidenced by the acts of the parties. *Lindenborg*. Therefore, we find the evidence supports the trial court's determination that the parties mutually agreed to rescind the lease.

When parties mutually rescind a contract, absent evidence to the contrary, it is implied the parties intend to be restored to their original *status quo*, if possible, or to be compensated for any portion of the contract already performed. 17A C.J.S. *Contracts* §§ 392, 440, 442 (1963). An exact or literal return to the *status quo* is not required in a mutual rescission, nor even when one party seeks rescission due to fraud, breach, etc.[2]

■ Here, the parties agreed to rescind the contract. There was consideration for the mutual rescission: each party who previously had continuing obligations under the contract was relieved of further performance. The effect of the rescission was to cancel or terminate the lease prospectively. However, until the aircraft's destruction, mutual obligations had arisen and had been fulfilled—the aircraft provided by lessor to lessee and rent paid by lessee to lessor. The trial court concluded that when the parties agreed to mutually rescind the contract they further agreed they should be returned to as close a *status quo* as possi-

"In equity, a contract may be rescinded, although the parties cannot be placed in *status quo*, where the clearest and strongest equities demand such relief and equity can still be done between the parties and the rescinding party makes such restitution as is just and within his power."
*Cooley v. Stoeffler*, (1950) 120 Ind.App. 617, 621, 92 N.E.2d 926, 927 (quoting 17 C.J.S. *Contracts* § 438). Thus, where the circumstances of the case render a return to the exact and literal *status quo* impossible, equity will require restoration as nearly to *status quo* as the circumstances will permit. 17A C.J.S. *Contracts* § 438.

ble.[3] There is no evidence the parties intended otherwise. Consequently, if there was any unpaid rent, it should be paid; if there was any unearned rent, it should be refunded. In this manner the parties are placed as close to the *status quo* as possible. In awarding the judgment to plaintiffs, the trial court was returning the parties as close to the *status quo* as possible by refunding unearned rent as their agreement implied.

■ Appellants complain the amount of the judgment is derived from the excess of the insurance proceeds over the $105,000 lien of Economy Finance and such is inconsistent with the theory of rescission. Under the theory of rescission of contract, appellees may have been entitled to more than $25,000. The total lease rent for five years (60 months) was $171,725. The monthly value of renting the airplane was $2862.08.[4] Lessees paid $41,805.60 for which they received use of the airplane for two months, or $5724.16 in value. Hence, lessees could have received as much as $36,081.44 in refunds for rents paid in advance. However, their complaint asks for the amount of $25,000. At no time in the proceedings did they amend their complaint to request more. It is logical to assume the trial court merely limited the award to the prayer contained in the complaint. Hence, the award is supported by the special findings of facts and the evidence.

■ The trial court's conclusions of law also awarded the judgment on the theories of fraud, misrepresentation, and breach of contract. Unlike the mutual rescission theory, the special findings of facts do not support the theories of fraud, misrepresentation, or breach of contract. Fraud or misrepresentation requires the elements of misrepresentation of a material fact, scienter, deception, reliance, and injury. *Plumley v. Stanelle*, (1974) 160 Ind.App. 271, 311 N.E.2d 626. The special findings of fact do not reveal that appellants made any material misrepresentation of fact to appellees upon which appellees relied. Special Finding XVI reveals only that it was appellees' "understanding" that they should receive $25,000 of the insurance proceeds. Such an understanding does not constitute reliance on a material misrepresentation. The mere conclusion of law that fraud or misrepresentation occurred will not suffice in a case in which special findings of fact are required or requested. *Salk v. Weinraub*, (1979) Ind., 390 N.E.2d 995.

■ As to the theory of breach of contract for the distribution of insurance proceeds, it is well known that a contract requires offer, acceptance, and consideration. Consideration is an essential element to every contract. *Puetz v. Cozmas* (1958) 237 Ind. 500, 147 N.E.2d 227. The special findings of fact do not recite any consideration or "meeting of the minds" for the contract between appellees and appellants as to the distribution of the insurance proceeds. Therefore, the judgment cannot be upheld on the theory of breach of contract.

## II

■ Appellants next complain that judgment was rendered against Economy Leasing, Economy Finance, and Morris Plan. Because rescission of contract is the only theory which sustains the $25,000 judgment, the judgment is correct only against the obligated party to the lease agreement, namely, Economy Leasing. Since Economy Finance[5] and Morris Plan[6] were not parties to the lease agreement, we reverse as to them.

---

3. A return to the exact *status quo* was impossible because the lease had been partially performed by both parties and the plane destroyed.

4. $171,725 (total lease amount) divided by 60 months equals $2,862.08. This figure differs from the *actual* monthly rental payments because of the advance payments made by lessees.

5. We note that Economy Finance was assigned the rental payments from the lease, however, Economy Finance did not assume any of the responsibilities of the lessor.

6. Morris Plan served as only a collecting agent for the rental payments.

### III

■ Finally, appellants complain that prejudgment interest should not be awarded. Prejudgment interest is at least recoverable where the damages sought are complete and ascertainable as of a particular time and in accordance with fixed rules of evidence and known standards of value. *New York, Chicago and St. Louis Railway Company v. Roper,* (1911) 176 Ind. 497, 96 N.E. 468; *Town & Country Mutual Insurance Co. v. Savage* (1981) Ind.App., 421 N.E.2d 704; *Fort Wayne National Bank v. Scher,* (1981) Ind.App., 419 N.E.2d 1308.

■ Prejudgment interest has been awarded in rescission cases before. *Smeekens v. Bertrand,* (1974) 262 Ind. 50, 311 N.E.2d 431. The fact that damages are unliquidated is not a basis for disallowing prejudgment interest. *Luksus v. United Pacific Insurance Co.,* (7th Cir. 1971) 452 F.2d 207, 210. *Luksus* involved a construction contract in which prejudgment interest was allowed to a subcontractor. The rental value of certain equipment was agreed to by the parties and in *Luksus* the damages were simply a matter of mathematical computation.[7] Although some Indiana case law would show the fair rental value of a house is not definitely ascertainable by fixed rules of evidence, *City of Evansville v. Rieber,* (1979) Ind.App., 385 N.E.2d 217, in this case the rental value of the airplane was agreed to by the parties in their lease agreement.

■ Damages in this case were complete and ascertainable in accordance with fixed rules of evidence. Rescission of the lease requires the trier of fact to know the following information in ascertaining damages:

(1) the term of the lease—five years;

(2) the total amount of rent under the lease—$171,725;

(3) the amount paid by lessee—$41,805.60;

(4) the time lessee actually used the plane—two months.

Armed with this information, it is a simple mathematical calculation to determine the proper amount to be refunded to appellees after rescission. The mere fact appellees failed to request in their complaint and subsequently failed to obtain a judgment of the full amount due does not preclude awarding prejudgment interest.

The amount properly due appellees under a rescission of contract theory was ascertainable at a particular time, namely, at that time the parties knew the contract was rescinded. The parties by their conduct rescinded the contract when the insurance proceeds were received but were not utilized to purchase a new plane. Hence, the date the insurance proceeds were relinquished to appellants is an appropriate date to begin prejudgment interest.

Reversed in part with instruction the judgment be vacated as to Morris Plan and Economy Finance.

Judgment affirmed as to Economy Leasing.[8]

BUCHANAN, C. J., and SULLIVAN, J., concur.

---

7. However, not all construction contracts will allow for prejudgment interest. *Portage Indiana School Construction Corp. v. A. V. Stackhouse Co.,* (1972) 153 Ind.App. 366, 287 N.E.2d 564.

8. Appellees have requested an additional 10% be added to the judgment pursuant to Ind.Rules of Procedure, Appellate Rule 15(G). We deny that request.