In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-2156

BETTY DECKARD, et al.,

*Plaintiffs-Appellants*,

*v.*

GENERAL MOTORS CORP.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 99-1385-C-Y/S—**Richard L. Young**, *Judge*.

ARGUED DECEMBER 6, 2001—DECIDED OCTOBER 1, 2002

Before CUDAHY, EASTERBROOK and EVANS, *Circuit Judges*.

CUDAHY, *Circuit Judge*. Betty Deckard, Michael W. Deckard, Frank Pershing, Donna Shields and Brian Shields (the plaintiffs) appeal from the order of the district court dismissing their claims against General Motors Corporation (GM) arising from an automobile accident. We reverse.

## I.

On August 16, 1997, Karen Watson, while driving her 1992 Toyota Tercel, failed to stop at a stop sign and struck a 1994 GMC Jimmy truck driven by Betty Deckard. The Jimmy was occupied by passengers Donna Shields, Brandi

Shields and Sherry Pershing (who was pregnant with Adrianna[1]). As a result of the impact of the collision, the Jimmy rolled over and all of its occupants, except Brandi, were ejected. Betty Deckard and Donna Shields were seriously injured; Sherry and Adrianna Pershing were killed.

On February 4, 1998, the plaintiffs in settling their claims against Karen Watson and her insurer, United Farm Bureau Mutual Insurance Company (Farm Bureau), signed release agreements. Betty and her husband, Michael Deckard, and Donna and her husband, Brian Shields, signed the same form release agreements that purported to release:

> . . . United Farm Bureau Mutual Insurance and *all other persons, firms or corporations liable or who might be claimed to be liable* . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, on their own behalf and on behalf of their children, and particularly on account of all injuries, known and unknown . . . which resulted or may in the future develop from an accident which occurred on or about the 16th day of August, 1997, in or near Bedford, Lawrence County, Indiana . . . .

Separate App. to Appellant's Br., Exhibit 4, at 3 (emphasis added). Although Betty Deckard and Donna Shields allegedly incurred over $200,000 and $40,000, respectively, in medical expenses, the Deckards and the Shields settled their claims for $5,000 each.

Frank Pershing also signed release agreements to settle claims arising from the death of his wife Sherry and his

---

[1] Adrianna is referred to in some documents as Andrea or Adriana. We use the name Adrianna because that is the name the appellants use in their appellate brief.

unborn daughter Adrianna. With respect to the claims arising from the death of Sherry, Frank purported to release:

> . . . United Farm Bureau Mutual Insurance and *all other persons, firms or corporations liable or who might be claimed to be liable* . . . on account of all injuries, death and damages suffered directly to Sherry Pershing and for the loss of services of said Sherry Pershing to Frank Pershing which resulted or may in the future develop from an accident which occurred on or about the 16th day of August, 1997, in or near Bedford, Lawrence County, Indiana . . . .

*Id*. at 1 (emphasis added). Frank Pershing received $42,500 in settlement of these claims with respect to Sherry. He received an additional $42,500 in exchange for settling the claims arising out of the death of Adrianna.[2]

On August 12, 1999, the plaintiffs filed an automotive products liability suit against GM claiming that the Jimmy was improperly designed. On March 1, 2000, GM filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the release agreements that the plaintiffs entered into with Farm Bureau also released GM.

On March 27, 2000, Farm Bureau entered into agreements captioned "Rescission Agreement and Release" with the plaintiffs, purporting to rescind the original release agreements and to enter into new release agreements that specifically excluded GM from being released.

---

[2] Frank Pershing signed a different, more narrowly worded, release agreement with respect to the claims arising from Adrianna's death. That release agreement is not the subject of this appeal. Pershing's claims against GM on behalf of Adrianna are still pending.

On March 31, 2001, the district court entered a judgment and order granting GM's motion. The district court concluded that the plaintiffs intended to release GM when they signed the original release agreements with Farm Bureau. The district court also rejected the plaintiffs' attempt to rescind the original release agreements. The order was made final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure on May 29, 2001. The plaintiffs appeal.

## II.

This court has jurisdiction under 28 U.S.C. § 1291 over an appeal from a final order of a district court. Although the district court's order is cast in terms of a motion to dismiss, both parties submitted evidence outside the pleadings for the district court's consideration, and so, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, GM's Motion to Dismiss was converted into a Motion for Summary Judgment. A motion to dismiss was improper since release is an affirmative defense, Fed. R. Civ. P. 8(c), and the existence of a defense does not undercut the adequacy of the claim. *See Gomez v. Toledo*, 446 U.S. 635, 639-41 (1980). We review de novo a summary judgment under Rule 56. *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 359 (7th Cir. 1992). Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we draw all justifiable inferences in favor of the nonmoving party. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). Since this case arises from the diversity jurisdiction of a federal court sitting in Indiana, we apply Indiana

contract law to interpret the purported release and rescission agreements. *See Strachan v. Nisbet*, 202 F.2d 216, 218 (7th Cir. 1953).

**A.**

There are two sets of release agreements in this case. GM argues that the original release agreements control the disposition of this case, while the plaintiffs argue that the new release agreements (which specifically exclude GM from being released) control. The plaintiffs also argue that the district court erred in concluding that the rescission agreements that they entered into with Farm Bureau did not effectively rescind the original release agreements. We conclude that the rescission agreements did not rescind the original release agreements and that the original release agreements control this case.

The purpose of rescission is to return contracting parties to their pre-contract position. *Am. Standard Ins. Co. v. Durham*, 403 N.E.2d 879, 881 (Ind. Ct. App. 1980). However, an exact or literal return to the status quo is not necessary. *Econ. Leasing Co. v. Wood*, 427 N.E.2d 483, 486 (Ind. Ct. App. 1981). Rescission can arise under two circumstances: (1) it may be effected by mutual agreement and (2) it may be granted unilaterally because of fraud, illegality, mutual mistake or a contract provision providing for rescission. *Id.* The parties by mutual consent may rescind a contract at any stage of performance. *Id.* In its order, the district court held that the rescission agreements did not rescind the original release agreements because the parties involved were not returned to their pre-contract positions. Attached App. to Appellants' Br. at 11-15. The district court stated that the parties could not return to their pre-contract positions because the original release agreements had been fully performed, and the plaintiffs had not returned the settlement proceeds to Farm Bureau. *Id.* Further, the district court concluded

that the rescission agreements were not valid because they were not supported by new consideration.

While both parties, on appeal, disagree about whether the parties to the original release agreements could return to their pre-contract positions, both parties failed to address whether the plaintiffs could enter into *any* rescission agreements once GM acted upon the original release agreements.

"Generally, only parties to a contract or those in privity with the parties have rights under the contract." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314-15 (Ind. 1996). However,

> One not a party to the contract may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance or some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Id.* at 1315. *OEC-Diasonics* recognizes that third-party beneficiary contracts exist under Indiana law. Stated in another way, a third-party beneficiary contract is formed when (1) the parties intend to benefit a third party, (2) the contract imposes a duty on one of the parties in favor of the third party and (3) the performance of the terms of the contract renders a direct benefit to the third party. *Kiltz v. Kiltz*, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999).

Under Indiana law,

> "the parties to a contract entered into for the benefit of a third person may rescind, vary, or abrogate the contract as they see fit, without the assent of the third person, at any time before the contract is accepted, adopted, or acted upon by [the third person], and such rescission deprives the third person of any rights under or because of such contract."

*Seavey v. Estate of Fanning* (*In re Estate of Fanning*), 333 N.E.2d 80, 84 (Ind. 1975) (quoting 17 Am. Jur. 2d *Contracts* § 317 (1946)). Thus, if the original release agreements were third-party beneficiary contracts that were intended to benefit GM by releasing all claims against GM, then the plaintiffs and Farm Bureau cannot rescind or vary[3] the original release agreements once GM acted upon its alleged right in the original release agreements by, for example, moving to dismiss the plaintiffs' complaint, unless GM assents. On the other hand, if the original release agreements were not third-party beneficiary contracts because they were not intended to benefit GM, then the rescission agreements are redundant and the plaintiffs can sue GM on their automotive liability claim whether or not the

---

[3] The plaintiffs' simultaneous entries into rescission agreements and into new release agreements may be seen as an attempted modification of the original release agreements. *See* Restatement (Second) of Contracts, § 89 cmt. b (1981) (noting that parties occasionally seek to modify an existing contract by simultaneously rescinding the existing contract and entering into a new contract). Interpreting the transaction between the plaintiffs and Farm Bureau in this manner would allow the intent of the parties to be effectuated. While contracts not fully performed may be modified without new consideration, *see id.* § 89, the plaintiffs would still be barred from modifying the original release agreements without the assent of GM under Indiana law, *see Estate of Fanning*, 333 N.E.2d at 84.

rescission agreements have been executed. Thus, the controlling agreements in this case are the original release agreements.[4]

## B.

The district court concluded that the original release agreements unambiguously released GM. On appeal, the plaintiffs argue that the court erred in reaching this conclusion. Further, the plaintiffs contend that the district court erred in failing to consider extrinsic evidence on whether the parties intended to release GM.

Under Indiana law, release agreements are to "be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *Huffman v. Monroe County Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992). "Until *Huffman*, a release of one tortfeasor operated as a release of all, regardless of the parties' intent." *Pelo v. Franklin Coll.*, 715 N.E.2d 365, 366 n.1 (Ind. 1999). After *Huffman*, however, "[a] release executed in exchange for proper consideration works only to release those parties to the agreement unless it is clear from the document that others are to be released as well." *Huffman*, 588 N.E.2d at 1267. To determine the parties' intent, "[t]he contract must be read as a whole." *OEC-Diasonics*, 674 N.E.2d at 1315. "The interpretation of a release is determined by the terms of the particular instrument, in light of all facts and circumstances." *Id.* at 1314. Where

---

[4] The plaintiffs also argue that the district court abused its discretion by not rescinding the original contract on equitable grounds. In light of our holding that the rescission agreements would not be valid absent the assent of GM, the district court did not abuse its discretion in refusing to rescind the original release agreements.

a contract is unambiguous, "'the intent of the parties should be determined from the language employed in the document.'" *Id.* (quoting *Thomas v. Thomas*, 577 N.E.2d 216, 219 (Ind. 1991)).

The original release agreements stated that the plaintiffs were releasing "all other persons, firms or corporations liable or who might be claimed to be liable . . . on account of all injuries . . . which might have resulted . . . from an automobile accident." The intermediate appellate courts of Indiana have held that such language in a release agreement is plain and unambiguous in its intent to release third parties who satisfy that language. *See Estate of Kelly Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269 (Ind. Ct. App. 2001) (holding that a release of "any other person, firm, corporation charged or chargeable" barred dramshop claims against a tavern); *Stemm v. Estate of Dunlap*, 717 N.E.2d 971 (Ind. Ct. App. 1999) (holding that the release of "all other persons and organizations who are or might be liable" barred claims against the second driver in an accident); *Dobson v. Citizens Gas & Coke Util.*, 634 N.E.2d 1343 (Ind. Ct. App. 1994) (holding that a release of "all other persons, firms or corporations liable or who might be claimed to be liable" barred claims against landowner). Thus, the district court did not err in its initial conclusion that the plain language of the original release agreements released GM. The district court, however, did err in failing to consider extrinsic evidence of the parties' intent to release GM.

Parol evidence in Indiana follows the general rule that parol evidence may not be used "to vary or contradict a written contract complete on its face." *State Highway Comm'n v. Wilhite*, 31 N.E.2d 281, 282 (Ind. 1941). The parol evidence rule "excludes evidence of prior or contemporaneous oral [and written] agreements which would vary a written contract." R.W. Gascoyne, Annotation, *Applicability of parol evidence rule in favor of or against one not a party to contract of release*, 13 A.L.R.3d 313,

§ 2b (2001); *see also* Restatement (Second) of Contracts § 213 cmt. a (1981) (noting that the parol evidence rule "renders inoperative prior written agreements as well as prior oral agreements"). Indiana, however, recognizes exceptions to the parol evidence rule. One of these exceptions is that the parol evidence rule does not apply to persons other than the parties to the instrument. *Wilhite*, 31 N.E.2d at 282; *see also Burns v. Thompson*, 91 Ind. 146, 150 (1883) ("[I]n respect to strangers, written instruments, usually having no binding force, and the familiar rule against the variation of such instruments by parol evidence applies only to parties and privies."); *White v. Woods*, 109 N.E. 761, 762-63 (Ind. 1915) (same); *Cooper v. Cooper*, 730 N.E.2d 212, 216 (Ind. Ct. App. 2000) ("[T]he admissibility of parol evidence to vary the terms of a written instrument does not apply to a controversy between a third party and one of the parties to the instrument.").

In *Wilhite*, the State Highway Commission appealed from an award of the Industrial Board granting compensation for personal injuries suffered in an automobile accident to the appellee, Wilhite. Wilhite was employed by the Commission to operate a mowing machine drawn by a team of horses. He had sustained injuries when a motor vehicle driven by Wilbur Shelton for Samuel Barnett had "collided with the team, killing one of the horses, damaging the harness and moving machine, and inflicting personal injuries upon the appellee." *Wilhite*, 31 N.E.2d at 281. In settling the claims arising out of this accident, Wilhite executed a release which stated:

> It is further understood and Agreed, that this release is intended to cover *all actions, causes of action, claims and demands* for, upon, or by reason of any damage, loss or injury which may be traced either directly or indirectly to the aforesaid accident, as now appearing or as may appear at any time in the fu-

ture, no matter how remotely they may be related to the aforesaid accident. And this Release is executed with the full knowledge and understanding on my or our part that there may be more serious consequences, damages or injuries as the result of the accident afore-mentioned than now appear; and that more serious and permanent injuries, even to the extent of death, may result from the injuries sustained in the accident aforementioned.

*Id.* at 281-82 (emphasis added). The Commission argued that this release covered Wilhite's personal injury claims. Thus, under a state law that barred double recovery, the Commission argued that Wilhite was not entitled to compensation on account of his personal injuries since he already received compensation for his personal injuries as part of his settlement with Barnett.

Despite the plain language of the release, the Supreme Court of Indiana permitted the admission of parol evidence that supported "a finding that the release of the appellee's claim for personal injuries was not within the contemplation of the parties thereto, and that the part thereof referring to personal injuries was included through mutual mistake of the parties." *Id.* at 282. Wilhite had sought to admit evidence that his "personal injuries were not at that time thought to be consequential and that no mention was made of these [injuries]," that his "personal injuries were not mentioned" in a conversation between him and Barnett's insurance carrier and that he had "received a letter from the insurance company offering him $116 in settlement of his claim for the loss of his horse and the damage to his harness and mowing machine." *Id.* at 281. The court held that this evidence, "offered by the appellee as to the circumstances under which the release was executed[,] was proper." *Id.* at 282. Therefore, under *Wilhite*, the district court here

should have considered parol evidence in determining whether the plaintiffs intended to release GM.

GM argues that *Wilhite* and its predecessors do not apply to this case for three reasons. First, GM argues that it is not a stranger to the contract because it is within the class of "all corporations liable or might be claimed to be liable." This is unpersuasive. GM is a stranger to the contract because it was not involved in the drafting of the agreements, did not sign the agreements and was not in privity with any of the parties that did so. *Black's Law Dictionary* 1421 (6th ed. 1990) (defining "strangers" as a term intended to refer to third persons generally and "[i]n its general legal signification . . . opposite to the word 'privy.'"); *id.* at 1122 (defining "third parties" as a "term used to include all persons who are not parties to the contract, agreement, or instrument of writing by which their interest in the thing conveyed is sought to be affected"); *cf.* 13 A.L.R.3d 313, § 1a, n.4 (noting that a third person who is claiming a right under or through a party is not a stranger to the contract). And third-party beneficiaries can be strangers to a contract. *See Jackman Cigar Mfg. Co. v. John Berger & Son Co.*, 52 N.E.2d 363, 367 (Ind. App. 1944) ("[A] stranger to the contract and the consideration may maintain a suit to enforce . . . an agreement when it clearly appears that it was the purpose, or a purpose, of the contract to impose an obligation on one of the contracting parties in favor of such third party."). GM also argues that, unlike the strangers in *Burns*, *White* and *Wilhite*, GM is seeking to enforce the contract for its own benefit. But the "stranger to the contract" exception is not limited to the facts of those cases. Rather, the "stranger to the contract" exception applies in cases "where the controversy is between third parties, or one party to the instrument and a third party." *White*, 109 N.E. at 763 (quoting *Josephson v. Gens*, 141 N.Y.S. 524 (N.Y. App. Term 1913)). Finally, GM argues that it is not

seeking to vary or contradict the plain language of the release agreements. This argument appears to be that Indiana would apply the "stranger to the contract" exception to the parol evidence rule only to those contracts that are ambiguous. This is incorrect since Indiana already recognizes that parol evidence can be considered if the contract is ambiguous. *See*, *e.g.*, *Huffman*, 588 N.E.2d at 1267 (holding that where "contradictory references cloud the intent of the document . . . . parol evidence may be utilized to determine the parties' true intentions respecting the document's application"). The "stranger to the contract" exception is an additional exception to the parol evidence rule. For example, in *Wilhite*, despite the plain and unambiguous language of the contract, the court held that parol evidence could be used to determine the intent of the parties. *Wilhite*, 31 N.E.2d at 282. While commentators have criticized the "stranger to the contract" exception to the parol evidence rule, *see* 13 A.L.R.3d 313, § 2c (arguing that the parol evidence rule should apply both to strangers and to parties), *Wilhite*, *White* and *Burns* have not been overruled in Indiana.

Because the district court did not examine any parol evidence, it is difficult for us to determine whether there was sufficient evidence to support a finding that the plaintiffs did not intend to release GM from claims arising out of the automobile accident. We do, however, note some factors which may bear on the questions of intent. Putting aside the plaintiffs' other claims against GM and looking only at the actual medical expenses incurred by Betty Deckard and Donald Shields, the huge disparity between those expenses (over $240,000) and the amounts paid out in settlement to them ($10,000) may indicate that Deckard and Shields did not intend to release their automotive liability claims against GM. Further, the December 18, 1997, letter from Farm Bureau to the plaintiffs also indicates that the intent of the parties was to

release only the named insureds (Mr. and Mrs. Watson) and the permissive user (Karen Watson, the driver of the car during the accident) from liability and not to release GM.[5] Such a letter, being a prior expression of the parties' intent, would be admissible as parol evidence in this case. Finally, a powerful bit of evidence could be inferred from the answer to the question: "Was Watson at any risk of suit by GM?" The reason why an insurer such as Farm Bureau might want a general release is to protect its insured Watson, the reckless driver. There would be little point in settling *Deckard v. Watson* if the next suit would be *GM v. Watson*. If there was no risk that GM would proceed against Watson or the insurer, this would be strong evidence that the original release fails to reflect the actual deal, for no one had any reason to make a gift to GM. If the parties can with such parol evidence as is admissible in Indiana prove that they did not intend to release GM, then the plaintiffs have asserted a set of facts that, if true, would entitle them to relief. Thus, the district court erred in dismissing the plaintiffs' complaint.

## III.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion.

---

[5] We reach this determination without reference to the purported "Rescission Agreement and Release" documents. These documents are not barred by the parol evidence rule because they were written after the original agreements were signed. They might, however, be barred by the general rule that a court should only look within the "four corners" of a document.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
