George EVAN and Christine Evan,
Appellants–Plaintiffs,

v.

POE & ASSOCIATES, INC. and
Warren Tilford, Appellees–
Defendants.

No. 71A05–0611–CV–657.

Court of Appeals of Indiana.

Sept. 5, 2007.

▮▮▮▮▮▮▮▮▮▮

---

Donald E. Wertheimer, South Bend, IN, Attorney for Appellant.

Philip E. Kalamaros, Hunt Suedhoff Kalamaros, St. Joseph, MI, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

George Evan and Christine Evan (collectively, "the Evans") appeal the trial court's grant of summary judgment to Poe & Associates, Inc. ("Poe") and Warren Tilford. The Evans raise two issues, which we consolidate and restate as whether the trial court erred by granting Poe and Tilford's motion for summary judgment. We affirm.

The relevant facts follow. The Evans sought the services of Poe, an insurance agency, to acquire a homeowner's insurance policy for their residence in Valparaiso. On September 22, 1995, Tilford, an insurance agent at Poe, handled the Evans' request for insurance and filled out the insurance application. The Evans told Tilford that they had a prior insurance loss or claim arising out of an accident that occurred "some months before" involving George, and George's injuries were visible to Tilford. Appellants' Appendix at 22. One of the questions on the application was whether there were "ANY LOSSES DURING THE LAST 3 YEARS?," followed by the words "YES" and "NO." Appellees' Appendix at 24. A handwritten "X" appears between "YES" and "NO." *Id.* The application states "IF YES, INDICATE BELOW" and nothing is filled in below. *Id.* The Evans had no knowledge of where the "X" should have been placed

and relied on Tilford's expertise. Tilford represented to the Evans that an explanation of the prior loss was not necessary and that the underwriter would ask if there was any question. The application stated "APPLICANT'S STATEMENT: I HAVE READ THE ABOVE APPLICATION AND I DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF ALL OF THE [FOR]EGOING STATEMENTS ARE TRUE; AND THAT THESE STATEMENTS ARE OFFERED AS AN INDUCEMENT TO THE COMPANY TO ISSUE THE POLICY FOR [WHI]CH I AM APPLYING." *Id.* at 25. Safeco Insurance Company ("Safeco") subsequently issued a policy to the Evans.

On February 21, 2001, the Evans' residence was damaged by fire and smoke. The Evans submitted a claim to Safeco. Safeco paid some of the benefits but refused to pay all of the benefits under the policy because the Safeco adjuster asserted that the application had been filled out improperly because the question about any prior loss was marked "no" when George Evan had been involved in an automobile accident in another state and pursued a claim arising out of that accident. Appellants' Appendix at 23.

On March 1, 2002, the Evans signed a release agreement, which stated in part:

> *RELEASE AND AGREEMENT*
>
> (Read Carefully Before Signing)
>
> RE: Safeco Insurance Company
>   Policy No: 0Z3458696
>   Claim No: 13A–01043–0644
>
> WHEREAS, the Safeco Insurance Company did issue a policy as captioned above, insuring a structure and the contents thereof located at 3502 Oak Grove Drive, Valparaiso, Indiana; and

WHEREAS, Dr. George Evan and Christine Evan, husband and wife, are named insureds under the above-captioned insurance contract; and

WHEREAS, Equicredit is named as Mortgagee on the above-captioned insurance contract; and

WHEREAS, the property in question was damaged by a fire which occurred on February 12, 2001; and

WHEREAS, the insureds have made claim to the Safeco Insurance Company pursuant to the above-captioned insurance contract for damage to the dwelling, the contents and additional living expense; and

WHEREAS, Dr. George Evan, Christine Evan and the Safeco Insurance Company have submitted the dispute regarding the amount of damages to the dwelling to the contractual appraisal process which has resulted in a determination by the appraisers that the replacement cost value for damage to the dwelling resulting from the fire of February 12, 2001 was $174,698.07; the actual cash value of the damage to the dwelling resulting from the fire of February 12, 2001 was $152,635.41; and that the recoverable depreciation upon repair of the dwelling pursuant to the replacement cost condition in the above-captioned contract is $22,062.66; and

WHEREAS, the Safeco Insurance Company has made prior payments on the dwelling coverage of $66,626.47 on March 29, 2001, $10,926.41 on April 23, 2001, and $75,082.53 on December 18, 2001; which payments total $152,635.41; which amount should be credited to the amount recoverable for damage to the dwelling as determined by the appraisal; and

WHEREAS, Dr. George Evan and Christine Evan have made claim for additional living expense under the above-captioned insurance contract; and

WHEREAS, Dr. George Evan and Christine Evan have received payment for additional living expenses claimed to result from the fire of February 12, 2001 under the above-captioned contract in the amount of $65,500.35; and

WHEREAS, Dr. George Evan and Christine Evan have made claim for damage to their personal property resulting from the fire of February 12, 2001; and

WHEREAS, Dr. George Evan and Christine Evan have received and advanced payments from the Safeco Insurance Company for damage to the contents totaling $50,000.00, which amount should be credited to any amount payable for damage to personal property resulting from the fire; and

WHEREAS, the Safeco Insurance Company has paid to AmeriClean the sum of $23,090.13 for cleaning of contents damaged in the fire of February 12, 2001, which sum should be credited to any amount payable under the above-captioned insurance contract for damage to the personal property resulting from the fire of February 12, 2001; and

WHEREAS, the Safeco Insurance Company has issued a check payable to Dr. George Evan and Christine Evan and Lansing Cleaners in the amount of $1,623.96, which said sum should be credited to the amount payable under the policy for damage to the personal property resulting from the fire of February 12, 2001; and

WHEREAS, Dr. George Evan and Christine Evan have secured the services of Midwest Public Adjusting Company and Donald Wertheimer to assist them in their presentation of their claim resulting from the fire of February 12,

2001 to the Safeco Insurance Company; and

WHEREAS, Dr. George Evan and Christine Evan are obligated to pay one-half of the charge of the Umpire, Tom Figura, of Babcock & Figura, Inc., for the appraisal that determined the amount of the loss to the dwelling resulting from the fire of February 12, 2001; and

WHEREAS, Equicredit, the Mortgagee, is protected by the mortgage clause contained within the above-captioned insurance contract and consequently has an interest in the resolution of the portion of the claim dealing with damage to the dwelling; and

WHEREAS, the Safeco Insurance Company has investigated the above-captioned loss; and

WHEREAS, the Safeco Insurance Company has asserted that there were material misrepresentations in the original application for insurance; that the material misrepresentations in the application for insurance by Dr. George Evan and Christine Evan caused the Safeco Insurance Company to issue Policy # 0Z3458696; that had the Safeco Insurance Company been aware of the true facts; the Safeco Insurance Company would not have issued the above-captioned insurance contract; and

WHEREAS, it is the desire of Dr. George Evan, Christine Evan and the Safeco Insurance Company to fully and finally resolve any and all claims and disputes that they may have against one another arising out of the above-captioned insurance contract, including but not limited to any claims arising out of the fire of February 12, 2001, the subsequent claim submitted to the Safeco Insurance Company by Dr. George Evan and Christine Evan, and the issuance of

Policy # 0Z3458696 by the Safeco Insurance Company.

NOW, THEREFORE, for and in consideration of the payment of $22,062.66 to Dr. George Evan, Christine Evan, their attorney Donald Wertheimer, Midwest Public Adjusting Co. and Equicredit Corp., and $2,800.00 payable to Dr. George Evan, Christine Evan, Ameri-Clean, Donald Wertheimer, Attorney at Law, and Midwest Public Adjusting Co., the receipt of which is hereby acknowledged, Dr. George Evan and Christine Evan do hereby release, acquit and forever discharge the Safeco Insurance Co. of America and Spangler, Jennings & Dougherty, P.C., their respective agents, employees, representatives, attorneys, heirs, executors, administrators, successors and assigns, together with all other persons, firms and corporations, from any and all claims for damages, costs, expenses and compensations, including but not limited to any claim for breach of a duty of good faith and fair dealing or for punitive damage, whatsoever at law or in equity, and however arising, on account of, or in any way growing out of the issuance of Safeco Insurance Policy # 0Z3458696 to Dr. George Evan and Christine Evan, and/or a fire loss which occurred on February 12, 2001 at 3502 Oak Grove Drive, Valparaiso, IN; and on account of which it is asserted that the undersigned sustained damages and losses for which the parties hereby released are legally liable, all of which is denied and disputed by them.

It is further understood and agreed by and between the parties to this Agreement that the Safeco Insurance Company has no further obligation to make any further payment or do any act or thing in regard to the claims of Dr. George Evan and Christine Evan.

The undersigned agrees, for further consideration for the above-mentioned

payment, that this Release applies to all damages and losses resulting from the above-mentioned fire, the insurance policy, and the adjustment of a loss, even though those damages and losses may now be unanticipated, unexpected and unknown, as well as to all damages and losses which have already developed which are now known or anticipated. It is understood that this document constitutes a full and complete release of the Safeco Insurance Company from any and all claims.

The undersigned warrant that they are full age and legally competent to execute this Release. Before signing and delivering this Release, they have consulted with legal counsel and fully informed themselves of its content and meaning, and now execute this Release with full knowledge thereof.

Appellants' Appendix at 8–9.

On February 12, 2003, the Evans filed a complaint for negligence against Poe and Tilford. The Evans argued that Tilford negligently filled out the insurance application and that Tilford's negligence was also the negligence of Poe. Poe and Tilford filed a motion for summary judgment and argued that no breach of duty existed because the policy that was applied for was obtained, that the Evans' claims were barred by the release, that the Evans' claims were barred by the expiration of the statute of limitations, that any claim for rescission could not stand, and that Poe was not responsible for Tilford's claimed negligence as an independent contractor.

The trial court held a hearing on Poe and Tilford's motion for summary judgment. The Evans submitted a verified statement of George Evan that indicated that the Evans never intended for the release to apply to Poe and Tilford. The trial court granted Poe and Tilford's mo-

tion for summary judgment. The trial court's order stated, in part:

1. As a matter of law the "Release and Agreement" executed by Plaintiffs on March 1, 2002 before notary public Donald E. Wertheimer (who represented Plaintiffs at the time) clearly bars Plaintiffs from recovery herein as against the Defendants (See second paragraph of page 3 of said Release and Agreement).

2. No issue of material fact exists and the law is with the Defendants.

3. Because of the above and based on the other arguments as set forth on Defendants' Motion for Summary Judgment and Memorandum in Support thereof, summary judgment should be granted in favor of Defendants.

4. Judgment is therefore entered in favor of Defendants, Poe & Associates, Inc. and Warren Tilford and against Plaintiffs, George Evans and Christine Evans.

*Id.* at 4.

The sole issue is whether the trial court erred by granting Poe and Tilford's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure

that a party was not improperly denied its day in court. *Id.* at 974.

The Evans argue that: (A) the release does not bar their claims against Poe and Tilford; (B) their claim is not barred by the statute of limitations; (C) their claim is not barred on grounds that the insurance contract is voidable; and (D) Poe is not entitled to summary judgment on grounds that Tilford was an independent contractor. Because we conclude that the release bars the Evans' claims against Poe and Tilford, we need not address the other arguments.

A. *Release*

▬▬ The Evans argue that the release of Safeco does not bar their claims against Poe and Tilford. Generally, only parties to a contract or those in privity with the parties have rights under the contract. *OEC–Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–1315 (Ind.1996). However,

> [o]ne not a party to an agreement may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Id.* at 1315 (internal citation omitted). The intent of the contracting parties to bestow rights upon a third party must affirmatively appear from the language of the instrument when properly interpreted and con-

strued. *Id.* However, it is not necessary that the intent to benefit a third party be demonstrated any more clearly than the parties' intent regarding any other terms of the contract. *Id.*

▬▬ "A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well." *Huffman v. Monroe County Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind.1992). "A release, as with any contract, should be interpreted according to the standard rules of contract law." *Id.* "[R]elease documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *OEC–Diasonics, Inc.*, 674 N.E.2d at 1314 (Ind.1996) (quoting *Huffman*, 588 N.E.2d at 1267).

▬▬ A contract is ambiguous only if a reasonable person could find its terms susceptible to more than one interpretation. *Dobson v. Citizens Gas & Coke Util.*, 634 N.E.2d 1343, 1345 (Ind.Ct.App.1994). Where "a contract is unambiguous, the intent of the parties should be determined by the language employed in the document." *OEC–Diasonics*, 674 N.E.2d at 1314. Thus, if the contract is unambiguous, "we give effect to the intentions of the parties as expressed in the four corners of the document." *Art Country Squire, L.L.C. v. Inland Mortg. Corp.*, 745 N.E.2d 885, 889 (Ind.Ct.App.2001). We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties. *Id.* The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone. *Id.*

1. *Whether the Release Is Ambiguous*

▬▬ The Evans argue that the release is ambiguous. The Evans argue that the

trial court relied on the following portion of the release:

> NOW, THEREFORE, for and in consideration of the payment of $22,062.66 to Dr. George Evan, Christine Evan, their attorney Donald Wertheimer, Midwest Public Adjusting Co. and Equicredit Corp., and $2,800.00 payable to Dr. George Evan, Christine Evan, Ameri-Clean, Donald Wertheimer, Attorney at Law, and Midwest Public Adjusting Co., the receipt of which is hereby acknowledged, Dr. George Evan and Christine Evan do hereby release, acquit and forever discharge the Safeco Insurance Co. of America and Spangler, Jennings & Dougherty, P.C., their respective agents, employees, representatives, attorneys, heirs, executors, administrators, successors and assigns, together with all other persons, firms and corporations, from any and all claims for damages, costs, expenses and compensations, including but not limited to any claim for breach of a duty of good faith and fair dealing or for punitive damage, whatsoever at law or in equity, and however arising, on account of, or in any way growing out of the issuance of Safeco Insurance Policy # 0Z3458696 to Dr. George Evan and Christine Evan, and/or a fire loss which occurred on February 12, 2001 at 3502 Oak Grove Drive, Valparaiso, IN; and on account of which it is asserted that the undersigned sustained damages and losses for which the parties hereby released are legally liable, all of which is denied and disputed by them.

Appellants' Appendix at 8. The Evans point out that a subsequent paragraph states that "[i]t is understood that this document constitutes a full and complete release of the Safeco Insurance Company from any and all claims." *Id.* The Evans argue that "[t]his provision names only Safeco and indicates that the purpose of the release is to release Safeco from any and all claims, but not a stranger to the agreement." Appellants' Brief at 10. The Evans appear to rely on *Huffman* to argue that "[a]s these contradictory references cloud the intent of the document, parol evidence may be utilized to determine the intent of the parties, and this gives rise to a genuine issue of material fact which precludes summary judgment." *Id.* at 10–11.

In *Huffman,* Christopher Huffman was injured at a track meet. 588 N.E.2d at 1265. Huffman and his father brought suit against the Monroe County Community School Corporation (hereinafter "MCCSC"), the Tell City–Troy Township School Corporation (hereinafter "TCTTSC"), and the Indiana High School Athletic Association, Inc. (hereinafter "IHSAA"). *Id.* The Huffmans entered into a covenant not to sue with the TCTTSC, which was then dismissed from the suit. *Id.* The Huffmans executed a "General Release" in favor of IHSAA in exchange for $5,000. *Id.* The remaining defendant, MCCSC, filed a motion for summary judgment arguing that the Huffmans' release of the IHSAA served to release them from liability as a matter of law under this State's "release rule." *Id.*

The Indiana Supreme Court noted that Indiana had traditionally adhered to the "common law doctrine that release of one joint tortfeasor operates as a release of all other tortfeasors," also known as the release rule. *Id.* at 1266. The court abrogated the release rule and held that "from this point forward, release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *Id.* at 1267.

The court held that the release was not "clear and unambiguous" on its face based on the first and second paragraphs of the release. *Id.* The first paragraph named

only "the IHSAA, its employees, agents, and assigns as the person being released from any and all claims, demands, damage actions, causes of action or suits of any kind." *Id.* The second paragraph stated that the terms of the settlement have been accepted "for the purpose of making a full and final compromise, adjustment and settlement of any and all claims, disputes, or otherwise, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid." Id. The court concluded that "[t]hese contradictory references cloud the intent of the document." *Id.*

Here, unlike in *Huffman,* the release agreement specifically stated that the Evans released Safeco "together with all other persons, firms and corporations, from any and all claims for damages, costs, expenses and compensations, including but not limited to any claim for breach of a duty of good faith and fair dealing or for punitive damage, whatsoever at law or in equity, and however arising, on account of, or in any way growing out of the issuance of Safeco Insurance Policy # 0Z3458696 to Dr. George Evan and Christine Evan, and/or a fire loss which occurred on February 12, 2001." Appellants' Appendix at 8.

We find *Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269 (Ind.Ct.App.2001), instructive. In *Estate of Spry,* Kelly S. Spry left Leiters Ford Tavern in a car driven by John Taylor. 749 N.E.2d at 1271. Taylor's car went off the road, and Kelly was killed in the ensuing accident. *Id.* Kelly's Estate filed a claim with Taylor's automobile insurer, GRE Insurance Group ("GRE"). *Id.* Taylor's automobile insurance policy provided coverage for a maximum of $25,000 in bodily injury damages for each person injured in an automobile accident. *Id.* In addition, Taylor was serving a prison sentence and did not

have substantial assets. *Id.* Therefore, the Estate agreed to settle its claim against Taylor and GRE by signing a release of liability form in exchange for the $25,000 provided by the insurance policy. *Id.* The release of liability contained the following language:

> This Indenture Witnesseth that, in consideration of the sum of TWENTY FIVE THOUSAND dollars ($25,000.00), receipt whereof is hereby acknowledged, for myself/ourselves and for my/our heirs, personal representatives and assigns, I/we do hereby release and forever discharge JOHN W. TAYLOR JR. and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action on account of all personal injury, disability, property damage, loss or damages of any kind already sustained or that I/we may hereafter sustain in consequence of an accident that occurred on or about the 23RD day of AUGUST, in the year 1997, at or near ROCHESTER, IN.

*Id.* at 1271–1272. The Estate later filed a claim against Greg Davis, Ken Reininga, and Greg & Ken, Inc. d/b/a Leiters Ford Tavern (collectively, "the Tavern"). *Id.* The Tavern filed a motion for summary judgment, claiming that the general release form signed in the Estate's settlement with Taylor and GRE released the Tavern from any possible claims of liability. *Id.* at 1272. The trial court granted the Tavern's motion for summary judgment. *Id.*

On appeal, the Estate claimed that the trial court erred by granting summary judgment to the Tavern because the intentions of the Estate and of GRE were to release only Taylor and GRE from future

claims and liability arising from the accident that killed Kelly. *Id.* The Tavern argued that the release barred the Estate's claim against the Tavern. *Id.* at 1272–1273. We held:

> Here, the release provided that the Estate released Taylor "and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action...." Record, p. 47. There is no other language in the release instrument that contradicts the notion that all possible defendants are to be released. *See Huffman,* 588 N.E.2d at 1267. Consequently, the instrument unambiguously released the Tavern from liability. *See Dobson[v. Citizens Gas & Coke Util.,* 634 N.E.2d 1343, 1345 (Ind.Ct.App. 1994)]; *Stemm[ v. Estate of Dunlap,* 717 N.E.2d 971, 975–976 (Ind.Ct.App. 1999)].

*Id.* at 1273.

Here, the Evans released Safeco "together with all other persons, firms and corporations, from any and all claims for damages, costs, expenses and compensations, including but not limited to any claim for breach of a duty of good faith and fair dealing or for punitive damage, whatsoever at law or in equity, and however arising, on account of, or in any way growing out of the issuance of Safeco Insurance Policy # 0Z3458696 to Dr. George Evan and Christine Evan, and/or a fire loss which occurred on February 12, 2001." Appellants' Appendix at 8. This language is unambiguous. *See Estate of Spry,* 749 N.E.2d at 1273; *Stemm v. Estate of Dunlap,* 717 N.E.2d 971, 975 (Ind.Ct.App.1999) (holding that language that releases "all persons" does just that and is clear as long as no other terms are contradictory) (relying on *Dobson,* 634 N.E.2d at 1345), *reh'g denied.*[1]

### 2. Whether the Stranger to the Contract Rule Applies

The Evans appear to argue that the stranger to the contract exception applies and that George Evan's statement that he did not intend to release Poe and Tilford must be considered. In general, "[t]he parol evidence rule provides that extrinsic evidence is inadmissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are clear and unambiguous." *Cooper v. Cooper,* 730 N.E.2d 212, 215 (Ind.Ct.App. 2000). However, under the stranger to the contract rule, "the inadmissibility of parol evidence to vary the terms of a written instrument does not apply to a controversy between a third party and one of the parties to the instrument." *Id.* at 216 (relying on *White v. Woods,* 183 Ind. 500, 109 N.E. 761, 763 (1915)). *See also State Highway Comm'n v. Wilhite,* 218 Ind. 177, 180–181, 31 N.E.2d 281, 282 (1941) (holding that "the general rule that resort may not be had to parol evidence to vary or contradict a written contract complete on its face does not apply to others than the parties to the instrument"); *Kentucky & Indiana Bridge Co. v. Hall,* 125 Ind. 220, 224, 25 N.E. 219, 220 (1890) ("We recognize the rule that parol evidence may

---

1. We note that *Estate of Spry, Stemm,* and *Dobson,* involved joint tortfeasors. Similar to these cases, Safeco and Poe and Tilford were joint tortfeasors because their actions united to form the single injury to the Evans, the lack of adequate insurance. *See Depew v. Burkle,* 786 N.E.2d 1144, 1147 (Ind.Ct.App. 2003) ("The actions of joint tortfeasors unite and combine to form a single injury. Successive tortfeasors, on the other hand, are those whose respective negligent acts are independent of one another and produce different injuries.") (internal citations omitted), *trans. denied.*

not be introduced to impeach the contents of a writing, or to control its legal effect; but the circumstances under which a writing is executed, or the consideration upon which it rests, may always be shown by parol."); *Burns v. Thompson*, 91 Ind. 146, 150 (1883) ("[A]side from the question of fraud, while a dispositive instrument can not be varied by parol, so far as the parties to it are concerned, yet, in respect to strangers, written instruments, usually have no binding force, and the familiar rule against the variation of such instruments by parol evidence applies only to parties and privies, and does not forbid their being attacked and contradicted by parol by strangers to them.").

3. *Whether Extrinsic Evidence Allowed Under the "Stranger to the Contract" Exception Can Be Considered when the Release is Unambiguous*

■ Because the parol evidence rule does not apply to this controversy due to the stranger to the contract exception, we must determine what effect, if any, the unambiguous nature of the release has on our analysis. The Evans appear to argue that extrinsic evidence allowed under the stranger to the contract exception should be considered even when the contract is unambiguous. Specifically, the Evans rely on *Wilhite*, 218 Ind. 177, 31 N.E.2d 281 (1941), and *Deckard v. General Motors Corp.*, 307 F.3d 556 (7th Cir.2002).

In *Wilhite*, Richard Wilhite was operating a mowing machine propelled by a team of horses along a state highway in Pike County as an employee of the State Highway Commission. *Id.* at 178, 31 N.E.2d at 281. A motor vehicle driven by Wilbur Shelton for Samuel Barnett collided with the team, killing one of the horses, damaging the harness and mowing machine, and inflicting personal injuries upon Wilhite. *Id.* The Indiana Supreme Court noted:

There was evidence that shortly after the accident [Wilhite] had a conversation with Barnett, the owner of the motor vehicle, in which [Wilhite] demanded payment for damages to his property; that [Wilhite]'s personal injuries were not at that time thought to be consequential and that no mention was made of these; that Barnett directed [Wilhite] to take the matter up with the agent for his insurance carrier, which [Wilhite] did; that [Wilhite] demanded of the agent $140 for the loss of his horse, $10 for the damage to the harness, and $6 for the mowing machine. [Wilhite]'s personal injuries were not mentioned in this conversation. Subsequently, [Wilhite] received a letter from the insurance company offering him $116 in settlement of his claim for the loss of his horse and the damage to his harness and mowing machine. The offer was accepted, and the company forwarded a check for the above amount, which was cashed by [Wilhite].

*Id.* at 179, 31 N.E.2d at 281.

Wilhite settled with Barnett and Shelton for his personal injuries and gave them a full release. *Id.* The release recited the consideration of $116, identified the accident, and stated:

It is further understood and Agreed, that this release is intended to cover all actions, causes of action, claims and demands for, upon, or by reason of any damage, loss or injury which may be traced either directly or indirectly to the aforesaid accident, as now appearing or as may appear at any time in the future, no matter how remotely they may be related to the aforesaid accident. And this Release is executed with the full knowledge and understanding on my or our part that there may be more serious

consequences, damages or injuries as the result of the accident aforementioned than now appear; and that more serious and permanent injuries, even to the extent of death, may result from the injuries sustained in the accident aforementioned.

*Id.* at 179, 31 N.E.2d at 281–282.

Wilhite brought a workmen's compensation claim. *Id.* at 178, 31 N.E.2d at 281. The State Highway Commission filed an answer "setting up that prior to making claim for compensation [Wilhite] settled for his personal injuries with Barnett and Shelton and gave them a full release." *Id.* Wilhite "replied affirmatively, admitting the release but asserting that the sole consideration therefor was the settlement of his property damage claim and that the inclusion of a discharge of his claim for personal injuries in the release was the result of a mistake of fact." *Id.* at 178–179, 31 N.E.2d at 281. The Industrial Board ruled in favor of Wilhite. *Id.* at 178, 31 N.E.2d at 281.

The Indiana Supreme Court held that "[t]he evidence, if admissible, was sufficient to support a finding that the release of [Wilhite]'s claim for personal injuries was not within the contemplation of the parties thereto, and that the part thereof referring to personal injuries was included through mutual mistake of the parties." *Id.* at 180, 31 N.E.2d at 282. The State Highway Commission argued that "the evidence relating to the consideration for the release and the circumstances under which it was executed was improperly admitted because it amounted to a collateral attack on a contract with third parties not before the hearing tribunal." *Id.* The Indiana Supreme Court held that the rule that resort may not be had to parol evidence to vary or contradict a written contract complete on its face does not apply to others than the parties to the instrument. *Id.* at 180–181, 31 N.E.2d at 282. The court concluded that "the evidence offered by [Wilhite] as to the circumstances under which the release was executed was proper, and it follows that the judgment is sustained by sufficient evidence and that it is not contrary to law." *Id.* at 181–182, 31 N.E.2d at 282.

▮ We now turn to *Deckard v. General Motors Corp.*, 307 F.3d 556 (7th Cir. 2002). Initially, we note that we are not bound by the Seventh Circuit's interpretation of Indiana law. *See Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 812 n. 1 (Ind.Ct.App.2000) ("We note that, while federal court decisions interpreting Indiana law are persuasive authority, we are not bound by their interpretations."). In *Deckard*, the Seventh Circuit addressed the argument that "Indiana would apply the 'stranger to the contract' exception to the parol evidence rule only to those contracts that are ambiguous." 307 F.3d at 565. The Seventh Circuit held that such an argument was "incorrect" because:

Indiana already recognizes that parol evidence can be considered if the contract is ambiguous. *See, e.g., Huffman*, 588 N.E.2d at 1267 (holding that where "contradictory references cloud the intent of the document .... parol evidence may be utilized to determine the parties' true intentions respecting the document's application"). The "stranger to the contract" exception is an additional exception to the parol evidence rule. For example, in *Wilhite*, despite the plain and unambiguous language of the contract, the court held that parol evidence could be used to determine the intent of the parties. *Wilhite*, 31 N.E.2d at 282. While commentators have criticized the "stranger to the contract" exception to the parol evidence rule, *see* 13 A.L.R.3d 313, § 2c (arguing that the parol evidence rule should apply

both to strangers and to parties), *Wilhite, White* and *Burns* have not been overruled in Indiana.

*Id.*

The Seventh Circuit reached an opposite conclusion in *McWaters v. Parker,* 995 F.2d 1366 (7th Cir.1993), which we find persuasive. In *McWaters,* the court held:

> Having concluded that there was no fraud or mistake in this case, we believe that the language of the form clearly demonstrates the existence of adequate consideration and a meeting of the minds.
>
> Despite the clarity of the foregoing rule, Jeffery urges us to look beyond the four corners of the release to examine the parties [sic] actual intent. At oral argument, plaintiff's counsel suggested that *Huffman v. Monroe County Com. School,* 588 N.E.2d 1264 (Ind.1992), either permits or requires us to look beyond the release in this case. After reviewing *Huffman,* we find counsel's conclusion to be erroneous.
>
> In *Huffman,* the court abolished the common law rule that the release of one joint tortfeasor released all other tortfeasors. *Id.* at 1267. The court reasoned that a rule which assumed total release did not give appropriate deference to the parties' intent. To remedy this failing, the court held that a release should be interpreted like any other contract-"with the intent of the parties regarding the purpose of the document governing." *Id.* Nothing in this new rule addresses the appropriate method for determining the parties' intentions, and nothing in this new rule is inconsistent with our conclusion.
>
> In fact, the *Huffman* court's complete analysis sheds an unfavorable light on Jeffery's contention. In applying the new rule, the court stated:

> The release document in this case cannot be said to be "clear and unambiguous" on its face.... These contradictory references cloud the intent of the document. Consequently, parol evidence may be utilized to determine the parties' true intention respecting the document's application.

*Id.* The release Jeffery executed is not ambiguous; instead, it makes very clear that he released claims for unforeseen injuries. In the absence of ambiguity, *Huffman* does not require or permit us to look beyond the language of the release. Therefore, we hold that the release is not voidable for lack of consideration or lack of a meeting of the minds.

995 F.2d at 1375.

▇ We conclude that, in the context of a controversy that exists between a third party and one of the parties to the instrument, when a release is unambiguous we need not look at any other evidence to determine the parties' intent. *See OEC–Diasonics,* 674 N.E.2d 1312, 1314 (Ind. 1996) ("Where, as here, 'a contract is unambiguous, the intent of the parties should be determined by the language employed in the document.'") (quoting *Thomas v. Thomas,* 577 N.E.2d 216, 219 (Ind.1991); *Huffman,* 588 N.E.2d at 1267 (holding that other evidence may be utilized to determine the parties' true intentions respecting a document's applications only after concluding that contradictory references cloud the intent of the document)); *see also Estate of Spry,* 749 N.E.2d at 1273 ("One standard rule of contract interpretation is that if the language of an instrument is unambiguous, the intent of the parties is to be determined by reviewing the language contained between the four corners of that instrument."), *reh'g denied; Art Country Squire, L.L.C.,* 745 N.E.2d at 889 ("In interpreting an unambiguous contract, we give effect to the intentions of the

parties as expressed in the four corners of the document. Clear, plain, unambiguous terms are conclusive of that intent.") (internal citations omitted); *Wright v. State,* 700 N.E.2d 1153, 1155 (Ind.Ct.App.1998) ("The primary goal of contract interpretation is to give effect to the parties' intent. Accordingly, when the terms of a contract are clear and unambiguous, they are conclusive of that intent and the court will not construe the contract or look to extrinsic evidence. Rather, we will merely apply the contractual provisions.") (relying on *Beiger Heritage Corp. v. Montandon,* 691 N.E.2d 1334, 1336–37 (Ind.Ct.App.1998)).

Because we find that the release is unambiguous, we need not look to parol evidence to determine the intent. The release unambiguously releases Poe and Tilford in addition to Safeco. We conclude that the trial court did not err by granting Poe and Tilford's motion for summary judgment. *See, e.g., Dobson,* 634 N.E.2d at 1345 (holding that the trial court properly entered summary judgment because the release barred the plaintiff's claims).

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Poe and Tilford.

Affirmed.

MAY, J. and BAILEY, J. concur.