## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 30 2019, 9:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chad M. Buell
Schiller Law Offices, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Jamie C. Woods
Phillip A. Garrett
Thorne Grodnik, LLP
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roderick Williams, | July 30, 2019 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 18A-CT-3056 |
| v. | Appeal from the St. Joseph Superior Court |
| Robert Gill and South Bend Public Transportation Corporation, | The Honorable Jenny Pitts Manier, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 71D05-1703-CT-125 |

**Bradford, Judge.**

# Case Summary

[1] On June 30, 2015, Roderick Williams was involved in an automobile accident with Robert Gill. At the time of the accident, Gill was driving a bus in the course of his employment as a driver for the South Bend Transportation Corporation ("SBTC"). Williams allegedly suffered both property damage and personal injury as a result of the accident and filed a claim for damages against Gill and the SBTC (collectively, "Appellees"). On August 7, 2015, Williams signed a "Release of Claim" ("the Release") in exchange for $1733.06. The Release indicated that Williams was releasing Appellees from liability for any and all claims arising from or relating to the June 30, 2015 accident. Williams subsequently filed suit against Appellees, arguing that he believed that the Release only applied to his property damage claims and not his personal injury claims. During discovery, Williams failed to answer certain requests for admissions, resulting in the admissions being conclusively established pursuant to Indiana Trial Rule 36. Williams later filed an affidavit in which he attempted to contradict his prior admissions. The trial court rejected Williams's subsequent attempts to withdraw these admissions and to amend his affidavit and granted summary judgment in favor of Appellees.

[2] Concluding that the Release was unambiguous and clearly stated that Williams intended to release Appellees from liability for any and all claims arising from the accident, we conclude that the award of summary judgment in favor of Appellees was not erroneous. We further conclude that given the unambiguous nature of the Release, any potential error committed by the trial court in

denying Williams's requests to withdraw his admissions or to amend his designated evidence was at most harmless because the trial court could not have considered any extrinsic evidence relating to the parties' intent. We affirm.

# Facts and Procedural History

[3]     On June 30, 2015, Gill was employed by the SBTC and was driving a bus owned by the SBTC when he was involved in an automobile accident with Williams in South Bend. On August 7, 2015, Williams signed the Release releasing Appellees from liability for any and all claims arising out of the accident in exchange for $1733.06.

[4]     On March 17, 2017, Williams filed a lawsuit against Appellees, alleging that the Release only applied to property damage sustained in the accident and seeking additional damages for claimed personal injuries sustained as a result of the accident. During discovery, Appellees mailed, via certified mail, a First Request for Admissions on January 29, 2018. The document indicated that Williams was "to admit or deny the following Request for Admission in writing, on or before the 26th day of February, 2018." Appellant's App. Vol. II p. 55. Appellees mailed, via certified mail, a Second Request for Admissions on February 9, 2018. This document indicated that Williams was "to admit or deny the following Request for Admissions in writing, on or before the 10th day of March, 2018." Appellant's App. Vol. II p. 57. Williams failed to answer any of the requests for admissions. As a result, the admissions were conclusively established pursuant to Indiana Trial Rule 36.

[5] On March 21, 2018, Appellees filed a motion requesting a status conference and for the trial court to reset the scheduled trial date. Appellees included the Release, a copy of the check for $1733.06 made payable to Williams, and the First and Second Requests for Admissions as exhibits to the motion. A few weeks later, on April 6, 2018, Appellees filed a motion for summary judgment. On July 13, 2016, Williams filed a motion to withdraw his admissions and a response in opposition to Appellees' motion for summary judgment. Williams included an affidavit, signed on Williams's behalf by his counsel, in his designated materials in which he attempted to contradict his prior admissions. On July 16, 2018, Appellees filed a motion to strike Williams's affidavit and Williams sought permission to amend his affidavit to include a copy signed by Williams.

[6] The trial court conducted a hearing on all pending motions on August 23, 2018. After taking the matter under consideration, on September 4, 2018, the trial court issued an order in which it denied Williams's motion to withdraw admissions, granted Appellees' motion to strike Williams's affidavit, denied Williams's motion to amend his designated materials, and granted Appellees' motion for summary judgment. Williams's motion to correct error was deemed denied on November 19, 2018.

# Discussion and Decision

[7] Williams raises numerous contentions on appeal which we restate as whether the trial court (1) erred by granting Appellees' motion for summary judgment or

(2) abused its discretion by denying his requests to amend his designated evidence and to withdraw certain admissions.[1]

# I.  Summary Judgment

Williams contends that the trial court erred in granting summary judgment in favor of Appellees.

> [S]ummary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party.  The review of a summary judgment motion is limited to those materials designated to the trial court.  We review decisions on summary judgment motions carefully to ensure that the parties were not improperly denied their day in court.

*Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 165 (Ind. 2000) (internal citations omitted).

Williams argues that the trial court erred in granting summary judgment to Appellees because an issue of material fact remains as to whether the parties intended for the Release to apply to both his property damage and personal injury claims or to only his property damage claim.  For their part, Appellees

---

[1]  To the extent that Williams also argues on appeal that the trial court abused its discretion by failing to rule on his motion to correct error, we note that Williams has failed to provide any cogent argument or citation to relevant authority in support of this argument.  He has therefore waived this argument for appellate review. *See Zavodnik v. Harper*, 17 N.E.3d 259, 264 (Ind. 2014) (providing that appellant waived claim on appeal because he failed to support it with cogent argument or citation to relevant authority).

argue that the Release is unambiguous and the clear language of the Release indicates that the parties intended for it to apply to any and all claims arising out of/relating to the accident. We agree with Appellees.

[10] The Release is a settlement agreement, *i.e.*, an agreement to release Appellees from future liability in exchange for $1733.06. "Indiana strongly favors settlement agreements." *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011). "Settlement agreements are governed by the same general principles of contract law as other agreements." *Id.*; *see also Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92, 98 (Ind. Ct. App. 2007) ("A release, as with any contract, should be interpreted according to the standard rules of contract law.").

> The goal of contract interpretation is to determine the intent of the parties when they made the agreement. This court must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. Construction of the terms of a written contract generally is a pure question of law. If, however, a contract is ambiguous, the parties may introduce extrinsic evidence of its meaning, and the interpretation becomes a question of fact. A word or phrase is ambiguous if reasonable people could differ as to its meaning. A term is not ambiguous solely because the parties disagree about its meaning.

*Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*.

If contract language is deemed ambiguous, "the contract terms must be construed to determine and give effect to the intent of the parties when they entered into the contract." *Id.*

> Courts may properly consider all relevant evidence to resolve an ambiguity. Extrinsic evidence is evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement. An ambiguous contract should be construed against the party who furnished and drafted the agreement.

*Id.* "A contract is ambiguous only if a reasonable person could find its terms susceptible to more than one interpretation." *Evan*, 873 N.E.2d at 98.

However, "[i]f contract language is unambiguous, this court may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument." *Wilmoth*, 70 N.E.3d at 839. Stated differently, "[w]here a contract is unambiguous, the intent of the parties should be determined by the language employed in the document." *Evan*, 873 N.E.2d at 98 (internal quotation omitted).

> Thus, if the contract is unambiguous, we give effect to the intentions of the parties as expressed in the four corners of the document. We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties. The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone.

*Id.* (internal citations and quotations omitted). "Unambiguous contracts must be specifically enforced as written without any additions or deletions by the court." *Perfect v. McAndrew*, 798 N.E.2d 470, 479 (Ind. Ct. App. 2003).

[13] In interpreting a settlement agreement, "[t]he primary purpose in construing a document is to ascertain and give effect to the parties' mutual intent." *Id.* "The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) (citing *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268, 277 (Ind. Ct. App. 2001)). "The cardinal rule of contract interpretation is to ascertain the intention of the parties' from their expression of it." *Blumenfeld*, 745 N.E.2d at 277. "A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct." *Id.*

[14] In this case, the Release signed by the parties reads as follows:

> The Undersigned, being of lawful age, for sole consideration of one thousand seven hundred thirty three dollars and six cents ($1,733.06) to be paid to Roderick Williams do/does and for your/your heirs, executors, administrators, successors and assigns *release, acquit and forever discharge* Transpo and his, her, their, or its agents, servants, successors, heirs, executors, administrators, and all other persons, firms, corporations [ ] or partnerships of and *from any and all claims, actions, course of action, demands, rights, damages, costs, loss of services, expenses, and compensation whatsoever, which thus undersigned now has/have or which may hereafter accrue on account of us or any way growing out of any and all known and unknown, foreseen and unforeseen damages and the consequences thereof resulting or to result from the accident, casualty*

*or event which occurred on or about the 30th day of June 2015*, at or near Eddy Street & Jefferson Blvd. in South Bend, IN. It is understood and agreed that this settlement is the compromise of a claim, and that the payment made is not to be considered as an admission of liability on the part of the party or parties hereby released nor as a contribution toward any bodily injury or medical related expense of any kind.

The Undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the Undersigned, and that this Release serves as the entire agreement between the parties hereto, and that the terms of this release are contractual and not a mere recital.

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

Appellant's App. Vol. II p. 59 (emphases added). Upon review, we do not believe that a reasonable person could find the terms of the Release susceptible to more than one interpretation. As such, we conclude that the Release is unambiguous. We will therefore confine our review of the parties' intent to the four corners of the document and will enforce the terms as written.

[15] The Release clearly states that, in exchange for $1733.06, Williams agreed to "release, acquit and forever discharge" Appellees "from any and all claims, actions, course of action, demands, rights, damages, costs, loss of services, expenses, and compensation whatsoever … resulting or to result from the accident." Appellant's App. Vol. II p. 59. This language clearly indicates that by signing the Release, Williams intended to release Appellees from all claims arising from the accident. Williams cannot subsequently circumvent the clear

language used in the Release by stating on appeal that he believed it meant something else. *See Zimmerman*, 826 N.E.2d at 77 (providing that the parties' outward manifestation of intent, not their subjective intents, is relevant in contract matters).

[16]     The clear language of the Release supports the trial court's determination that Appellees were entitled to a judgment as a matter of law. Given that the Release is unambiguous, it would have been improper for the trial court to consider any contrary extrinsic evidence relating to the parties' intent when ruling on the summary judgment motion. *See Wilmoth*, 70 N.E.3d at 839; *Perfect*, 798 N.E.2d at 479. As such, we conclude that the trial court did not err in granting Appellees' motion for summary judgment.[2]

## II.  Motion to Amended Designated Evidence

[17]     Williams also contends that the trial court abused its discretion in denying his motion to amend his designated evidence, specifically to amend his affidavit. In requesting permission to file an amended affidavit, Williams's counsel explicitly states that the only change in the amended document is that it is

---

[2] We are unpersuaded by Williams's counsel's assertion that the entry of summary judgment should be reversed because Williams apparently signed the release without first discussing the matter with counsel, whom he had retained prior to signing the Release. *See generally Waterfield v. Waterfield*, 61 N.E.3d 314, 319–20, 326 (Ind. Ct. App. 2016) (denying a respect to set aside a settlement agreement when the party entered into the agreement despite her attorney's warnings and cautions). We are also unpersuaded by Williams's claim that the Release did not apply to his personal injury claims merely because he filed those claims under a different claim number than his property damage claim. Williams's attempt to circumvent the Release by filing his claims under different claim numbers does not change the fact that both the property damage and personal injury claims resulted from the accident.

signed by Williams rather than the original which was signed by Williams's counsel on Williams's behalf. Counsel states that "[o]therwise, the substance, form, and content of the Amended Designation of Materials is exactly the same as the previously filed Designation of Materials filed by Plaintiff on 7/13/2018." Appellant's App. Vol. II p. 178.

[18] In challenging the trial court's denial of his motion to amend his designated evidence, Williams argues that his affidavit, in both its original and amended form, presented statements sufficient to create an issue of material fact as to intent. However, given our conclusion above that the language of the Release was unambiguous, the trial court could not have properly considered this extrinsic evidence when determining the parties' intent. *See Wilmoth*, 70 N.E.3d at 839; *Perfect*, 798 N.E.2d at 479. Thus, even if the trial court had allowed Williams to amend his designated evidence to include a copy of his affidavit that was signed by him, the amended affidavit would have had no bearing on the trial court's summary judgment ruling as the trial court could not have considered it as evidence of intent. The trial court, therefore, did not abuse its discretion in this regard.

## III. Withdrawal of Admissions

[19] Williams last contends that the trial court abused its discretion by denying his request to withdraw certain admissions. In raising this contention, Williams argues that he should have been permitted to withdraw his admissions because without the admissions, he could have presented evidence that would have

created an issue of material fact as to intent that would have, in turn, precluded the award of summary judgment for Appellees. Given our conclusion above that the trial court could not have considered any extrinsic evidence regarding to intent because the Release was clear and unambiguous, we conclude that even if the trial court erred by denying Williams's request to withdraw his admissions, such error could, at most, be found to be harmless as it would have had no bearing on the trial court's summary judgment determination. The trial court, therefore, did not abuse its discretion in this regard.

[20] The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.